## THE STATE v. STUBBLEFIELD, Appellant.

### Division Two, June 26, 1900.

1. **Robbery: INTENT: INDICTMENT.** In an indictment for stopping a train with intent to rob, it is not necessary to set out the intent with the same degree of minuteness required in an indictment for the complete crime; it will be sufficient if it is reasonably precise.

2. ————: ————: **DESCRIPTION OF THING.** For an assault intending robbery, the thing intended to be taken in the robbery need not be described.

3. ————: **CAPITAL PUNISHMENT: CRUEL AND UNUSUAL PUNISHMENT.** The act authorizing capital punishment to be inflicted in train robbery cases, is not unconstitutional because inflicting cruel and unusual punishments.

4. ————: ————: **UPON WHOM INFLICTED.** The said act does not limit the inflicting of capital punishment to robbers so impairing the railroad track as to endanger the entire passenger train and the lives of the people thereon.

5. **Instruction: PRESUMPTION OF INNOCENCE: MODIFICATION.** A jury ought not to "feel compelled" to find a defendant guilty, and the trial court ruled correctly in striking from defendant's instruction on the presumption of innocence the words "unless you feel compelled to find him guilty as charged."

6. **Insanity as a Plea: ADMISSION.** The plea of insanity admits the doing of the act, but denies its guilt because of such insanity.

7. **Prosecuting Attorney: STATEMENT AND EVIDENCE OF OTHER CRIMES.** It is error to permit the prosecuting attorney in a train robbery case in his opening statement to state that he intends to prove during the trial that the defendant and others with whom he was associated were planning a burglary in the same house where the conspirators had assembled to hatch the train robbery. But inasmuch as all the evidence as to such crime was ruled out, and defendant's counsel jeered the prosecuting attorney for failure to make the promised proof, and because the testimony makes out a very clear case against defendant, the judgment of conviction is not reversed for such error.

Appeal from Pettis Circuit Court.—*Hon. Geo. F. Longan,* Judge.

AFFIRMED.

*Jno. Cashman, Jno. D. Dale* and *H. B. Shain* for appellant.

*Edward C. Crow,* Attorney-General, and *Sam. B. Jeffries,* Assistant Attorney-General, for the State.

(1) The indictment is in good form; it follows the language of the statute, and is not subject to serious objection. (2) Defendant objects to instruction numbered three on part of the State, for the alleged reason that it assumes the fact that defendant committed the act charged in the indictment. This objection must fall for the reason that upon interposing the affirmation plea of insanity the act constituting the alleged offense is thereby admitted and confessed. State v. Soper, 148 Mo. loc. cit. 239; State v. Pagels, 92 Mo. loc. cit. 309; State v. Welsor, 117 Mo. 570; 1 Wharton's Crim. Law, sec. 61; 2 Bishop's Crim. Law, sec. 669. (3) If error was committed by the court in striking out the words "unless they feel compelled to find him guilty as charged," it was in defendant's favor. He should not and can not complain if error be committed in his favor.

SHERWOOD, J.—The defendant has appealed from a judgment based upon a verdict which found him guilty of stopping a railway train with intent to rob (Laws 1895, p. 160) and assessing his punishment at 10 years in the penitentiary. He was embraced in the same indictment with one James L. West, but a severance was granted and separate trials had.

This case, owing to the fact of the defendants being co-indictees in the indictment, charged with the same crime,

is consequently of a piece with West's case, and so the state-
ment of facts heretofore made in the opinion in that case,
may stand for such statement in the case before us; and so
may certain rulings made in that case on points common to
both cases.    See State v. West, age 309 of this volume.

In West's case, the indictment therein was held valid
for reasons there stated.    Additional reasons occur which
support the validity of the indictment in the present instance,
and show that the opposite position is unsound.    Thus, under
an act to punish the "attempt to drown, suffocate, or strangle
any person, with intent to commit the crime of murder, an
approved form of the indictment avers that on, etc., at, etc.,
the defendant A, 'feloniously and unlawfully did take one X
into both the hands of him the said A, and then and there
feloniously and unlawfully did cast, throw, and push the
said X into a certain pond wherein there was a great quantity
of water, and did thereby then and there feloniously and un-
lawfully attempt the said X to drown and suffocate, with
intent then and there and thereby feloniously, wilfully, and
of his malice aforethought the said X to kill and murder.'"
[Bishop's New Crim. Proc., vol. 2, sec. 651; see, also, sec.
655, Ib.]

And it is not necessary to set out the intent with the
same degree of minuteness required in an indictment for
the complete crime; it will be sufficient in this regard, if it
is reasonably precise.    [Ib., sec. 77.]    And for an assault
intending robbery, the thing intended to be taken in the
robbery need not be described. [Ib., sec. 85; State v. Hughes,
76 Mo. 323.]

Another contention is made that the act in question was
never intended to authorize capital punishment to be in-
flicted except "where parties so impair a railroad track, in
the manner mentioned in the act, as to endanger the entire
passenger train and the lives of the people thereon."    The
main difficulty about this contention is that it runs counter

to the plainly worded provisions of the act; and as to the act being unconstitutional because of inflicting cruel and unusual punishment, to-wit, capital punishment for any of the acts mentioned in the law, it is enough to say that such acts or many of them, post-date our present Constitution, and are therefore, not embraced therein. But were this otherwise as to the date of the genesis of such crimes, it is by no means to be assumed that the act would be unconstitutional on the ground mentioned. Punishment is not to be regarded as either cruel or unusual because never inflicted before on a certain class of criminals. The Legislature is not necessarily restricted in inflicting the death penalty, because such legislation is newly enacted. The primary object of such a law is its deterrent effect, and the Legislature has the right to so increase the punishment of crimes, as to strike terror into the hearts of those who but for such intimidation, might be more strongly tempted to commit them. Passengers on trains, as well as express agents, engineers, conductors and firemen, have some title to consideration and some hold on legislative and constitutional protection, perhaps as great as those who seek to wreck trains or rob or murder passengers. And it is said that "no punishment is cruel simply because it is severe." [1 Bishop's New Cr. Law, sec. 947.] And it has been ruled that in order to determine whether the punishment inflicted by a statute is so great as to infract the Constitution, must depend materially upon the circumstances and nature of the act for which the punishment is inflicted. [Blydenburgh v. Miles, 39 Conn. loc. cit. 497; Cooley Const. Lim. (6 Ed.), 402.]

As to the instructions, those given at the instance of the State are such as have heretofore received the approval of this court, and were, for the most part, of the same general tenor and effect as those given on behalf of the State in West's case. In that case, drunkenness was offered as an

excuse for the crime and this excuse was put forward in the form of one of the refused instructions, and an instruction on the point was given for the State. In this case, the plea of insanity was interposed and the usual instructions on that subject given on behalf of the State.

Thirteen instructions were given on the part of the State. On defendant's part, 24 instructions were asked. Of these 12 were given with a modification of No. 11 which was the following: "The law does not require the defendant to prove himself innocent, but he is presumed to be innocent until the prosecution proves his guilt to the entire satisfaction of the jury beyond a reasonable doubt, and the burden rests upon the prosecution at every point in the case, from beginning to the close, to thus establish defendant's guilt, and it is the duty of the jury to give the defendant in this case the full benefit of this presumption of innocence, and to acquit him [unless they feel compelled to find him guilty as charged] unless the evidence convinces them of his guilt beyond a reasonable doubt." The modification is included in brackets. The trial court ruled correctly in thus modifying the instruction. The jury ought not to "feel compelled" to reach any conclusion; their only proper guides to their verdict, are the evidence, their consciences and the instructions of the court.

The other instructions given defendant, as well as those on behalf of the State, certainly placed the issue joined in a very fair and just light before the triers of the facts; and as there was ample evidence to support the verdict, there is no ground of complaint left as to the points already discussed; so that it is not material whether the 12 instructions refused were refused.

But apart from these considerations, the plea of insanity tendered by defendant, both by testimony and instructions, was in itself an admission that the act charged against him in the indictment was truly charged; the very plea of insanity

admits the doing of the act, but only denies its guilt because of such insanity. [State v. Pagels, 92 Mo. 300; State v. Welsor, 117 Mo. loc. cit. 579, 580; State v. Soper, 148 Mo. 217.]

Error is charged to have occurred because the prosecuting attorney was allowed, over the objection and exception of defendant's counsel, to state to the jury that he intended to prove during the trial that defendant and others with whom he was associated, were planning, on one or more occasions, *dum fervet opus* of the train robbery, a burglary in the house where the conspirators were assembled. This contemplated burglary shed no light on the crime afterwards committed, and no statement on the subject should have been made; but inasmuch as the court on objection ruled out any testimony on the improper subject; and inasmuch as the counsel for defendant in his speech to the jury, jeered his adversary because he did not make the proof on the tabooed point as he promised he would, and inasmuch as the testimony including defendant's unsustained plea of insanity makes out a very clear case against him, we will not hold the conduct of the prosecuting attorney as aforesaid, reversible error, notwithstanding we also hold the court erred in not rebuking the latter for that portion of his opening statement above stated.

We now come to the alleged misconduct of the jury, to-wit, that they separated in their rooms in the court house, or that one of their number, Bohannon, lurked and wandered in the darkness of such rooms, etc. The affidavit on this subject may be disposed of in the language of the affiant "that he is informed and believes and so states the facts to be," and by saying that belief bottomed on hearsay will not answer the demands of the law on an occasion of the sort referred to.

In reference to the affidavit of Aherns about seeing the jury out at Liberty park and near Park hotel in charge of an

officer, and Ahrens spoke to the officer, and the officer spoke to him, and one of the jury remarked to the officer he would like to go out to the "Kite-shaped track," and that the officer withdrew a little piece from the jury, but still in plain view of them. . These occurrences were not sufficient to invalidate the verdict of the jury.

Finally, it is urged that the sheriff or other officer was not sworn to take charge of the jury before they retired to consider of their verdict.    There is a provision to this effect: Revised Statutes 1889, section 4210; Ib. 1899, sec. 2629. The record shows this section was complied with at the time the sheriff took charge of the jury.    But the section referred to, while it requires that the sheriff be sworn in such cases, does not require that the record recite the fact, as is the case with section 4191, Revised Statutes 1889, now section 2610, Revised Statutes 1899.    So that, the maxim *expressio unius*, etc., may well be invoked as to the section pressed upon our attention.

Finding no reversible error in the record, we affirm the judgment.

All concur.