STATE of Missouri, Respondent,

v.

Ronald Lee WOLFE, Appellant.

No. 48188.

Supreme Court of Missouri,

En Banc.

Jan. 9, 1961.

Rehearing Denied Feb. 13, 1961.

F. D. Wilkins, John M. McIlroy, James B. Herd, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Fred L. Howard and Calvin K. Hamilton, Asst. Attys. Gen., for respondent.

LEEDY, Judge.

Appellant was charged with statutory rape under the provisions of § 559.260 (all statutory references are to RSMo 1949 and V.A.M.S., unless otherwise expressly noted), and, for the purpose of enhancing the punishment under the Habitual Criminal Act (§ 556.280 as repealed and reenacted, Laws 1959, S.B. 117, § 1, and § 556.290), the information alleged his ten prior felony convictions. In conformity with the requirements of § 556.280, the trial judge (out of the presence of the jury and prior to the submission of the case) heard and determined the evidence of the alleged prior convictions, and found that the accused (hereinafter referred to as defendant) had been convicted, sentenced and subsequently imprisoned as alleged in the information, and entered said finding of record. The question of defendant's guilt of the substantive offense charged was submitted to the jury under appropriate instructions, and it returned a verdict finding him "guilty of the offense of rape." The trial judge then proceeded to assess and declare the punishment, which he fixed at the extreme penalty. Judgment and sentence went accordingly, and the defendant has appealed.

It is not contended that the state failed to make a case for the jury, and inasmuch as defendant's brief wholly omits reference to any fact or circumstance attending the commission of the offense (we presume because not deemed relevant to the questions presented for determination), a detailed statement of such facts is not indicated. The offense is alleged to have occurred on October 18, 1959, at which time defendant states he was 30 years old, whereas his unfortunate child victim, a girl, was 8 years of age. The evidence was such as to have warranted the jury in finding the salient facts to be that about 7:30 p. m., on the evening in question, defendant, by using a candy bar, lured the child into the car he was driving, and away from the Sacred Heart Church's Fall Festival in Troy which she was attending with her parents and three sisters and a brother; he drove her some three miles into the country where he parked the car, and admittedly made re-

peated unsuccessful attempts to ravish the child, and otherwise had shocking relations (short of penetration) with her; the car was thereafter parked within about a hundred feet of a farm house, one of the occupants of which, at about 8:30 p. m., heard the car's motor idling, and looked out the window where in the darkness she discerned an object moving away from the automobile and toward the house; upon investigation this was found to be the prosecutrix, who was taken into the home, and forthwith returned to her family at the church picnic in Troy. She was taken to a hospital at once and examined, and her condition as described by the examining physician was such as to dispel any doubt of the fact that there had been penetration and extensive damage to the affected part by tearing.

The defendant had been discharged from the U. S. Penitentiary at Atlanta, Ga., only three days before the date of the offense here in question. He was apprehended at Hannibal on the day following the aforesaid Fall Festival. There he signed a statement in which he admitted he had driven the girl some three miles out from Troy where he stopped the car on the shoulder of the blacktop road; that it was at this point where his shocking behavior heretofore mentioned occurred; that he let the girl out in front of a house, and told her to go in and telephone to the church and tell them where she was; that before doing this he gave her an old rag with which to wipe off because she was bleeding; that he discarded this rag on the blacktop. It was later retrieved by the officers, and admitted by defendant to have been furnished by him for the purpose above mentioned. Both this object (in reality, a gray sport shirt) and the cloth covering on the front seat of the car defendant was driving at the time of his arrest contained type "O" blood stains. The victim has type "O" blood, while the defendant has type "A" blood. The defendant testified in his own behalf and denied that he raped the child. He stated that he does not remember anything that occurred between 2:00 p. m. on October 18, 1959, and October 20, 1959, when he found himself confined in the Lincoln County jail.

As his first point, defendant challenges the constitutional validity of § 556.-280, RSMo 1949 and V.A.M.S., as repealed and reenacted by Laws 1959, S.B. 117, § 1, because allegedly depriving him of his "right of trial by jury as heretofore enjoyed," in violation of Art. I, § 22(a), Const. of Mo. 1945. (This is the sole constitutional provision referred to in developing the point in defendant's brief.) There have been two recent cases in which the constitutionality of the 1959 enactment has been upheld; and in one of them, State v. Morton, Mo., 338 S.W.2d 858, 861, against attack based upon the very constitutional provision here invoked. It was there pointed out that under the provision in question, or somewhat similar provisions contained in our several constitutions since statehood, this court had "uniformly held that the right of trial by jury as guaranteed by the constitution is the same as the right that existed at common law and that at common law the jury determined the guilt or innocence of the accused and the court fixed the punishment. State v. Hamey, 168 Mo. 167, 67 S.W. 620, 57 L.R.A. 846; State v. Perrigin, 258 Mo. 233, 167 S.W. 573; State v. Johnson, Mo.Sup., 234 S.W. 794. See also 31 Am.Jur., Jury, Section 35, p. 40." See, also, State v. Griffin, Mo., 339 S.W.2d 803, 806, where, in summarizing the holding in Morton, the court stated: "It is there held that § 556.280 as repealed and reenacted by Laws 1959, S.B. 117, * * * did not deprive an accused of any constitutional right to have a jury pass on his prior convictions and punishment under the Habitual Criminal Act in contravention of Art. 1, § 22(a), Mo.Const., providing: 'That the right of trial by jury as heretofore enjoyed shall remain inviolate.'" Accordingly, the constitutional issue here raised stands ruled by the cases just referred to, and being entirely satisfied with the correctness of those adjudications, we

approve and reaffirm the reasoning and doctrine on which they are based.

■ The defendant complains that the court unduly restricted interrogation of the prospective jurors on voir dire. The point made in that connection, as set forth in the brief, constitutes a verbatim copy of ground 3 of the motion for new trial, reading as follows:

"3. The Court erred in restricting the interrogation of jurors on their voir dire examination; after the court had interrogated the jury collectively with respect to their qualifications generally, counsel for the State waived its right to interrogate the jurors further. One of defendant's counsel, John M. McIlroy then undertook to examine the jurors individually touching their qualifications to sit in said trial. Among other things counsel interrogated the first juror and inquired of him concerning following his own conscience if he had a reasonable doubt of defendant's guilt if he would maintain said reasonable doubt and vote to acquit him even though all other jurors believed him guilty. This juror answered in the negative and said he would forego his convictions and go along with the other eleven. He was temporarily excused. Counsel then undertook to interrogate the next juror as to whether or not he had formed or expressed an opinion as to defendant's guilt and if he had such an opinion at said time and whether or not it would take evidence to remove the same. He said he had such an opinion and was excused. Two other jurors then indicated that they had such an opinion and were excused. Whereupon, counsel was called to the bench and advised by the court that in the interest of time he would not permit further examination of the other jurors individually upon said subject. Objection was made to the court's ruling and exception saved."

It will be noted that this assignment fails to state "wherein and why" the rulings sought to be reviewed are claimed to be erroneous, as required by our rules. But for such breach we do not, in this instance, close our eyes to the assignment, this because of the nature of the case and the severity of the penalty, and because the reasons for such claimed error may be gleaned from the argument portion of the brief, i. e., that such failure "to permit defendant's counsel to examine jurors on the voir dire individually was a violation of defendant's constitutional right to trial by jury before a fair and impartial jury and did not permit counsel latitude on voir dire for purpose of challenge for cause and reasonable limits for favor." Examining into the merits of the assignment, we think the record does not sustain the interpretation given by defendant's counsel to the ruling now under attack. The only incidents on voir dire examination preserved in this record which could possibly have any bearing on this particular point are the following:

"By Mr. McIlroy (defendant's counsel): Q. Mr. Purk, you have heard the questions put to the panel by the Court. Now, could you serve on this jury and would you listen to the evidence and instructions of the court and render a fair and impartial verdict? Would you do so if you are left on the jury and if the State fails to prove the charge beyond a reasonable doubt would you acquit the defendant? Would you follow that instruction? Would you have any hesitancy in doing that?

"Mr. Grewach: Your Honor, may we have permission to approach the Bench?

"The Court: You may do so.

"Mr. Grewach (out of the hearing of the jury panel): For the record, I want to object to the specific question, that is, as to whether or not every

individual juror be asked the question as to whether or not he would make the State prove beyond a reasonable doubt that the defendant is guilty as charged, and I ask the Court to instruct counsel that the question be asked generally to the entire panel.

"The Court: In the interest of time, I am going to sustain the objection. I think it unduly emphasizes the point and, further, it will take up entirely too much time of all persons for that question to be put to each juror individually. *I will not restrict counsel asking questions generally and making further inquiry of any juror who has answered affirmatively.* [Emphasis supplied.]

\* \* \* \* \* \*

"By Mr. McIlroy: Q. Mr. Richards, would you hold out for your own convictions and stand up against all the other eleven if there was a reasonable doubt in your mind as to the guilt of this defendant?

"Mr. Grewach: Your Honor, may we approach the Bench again?

"The Court: You may.

"Mr. Grewach (out of the hearing of the jury panel): Your Honor, I am going to object to the question, as propounded by counsel, being put to each individual juror as to whether or not they would hold out against the eleven other jurors.

"The Court: I am going to sustain the objection. I think it is improper for counsel to ask each juror to state how he would vote under certain circumstances. We can't tell at this time the issues that will come before the jury at the time of their deliberations, and no juror knows now how he will vote under a particular situation. I am going to rule that counsel should not ask any juror as to what he would do or how he would vote under certain circumstances."

As to the first ruling, it is clear that the court did not cut off further inquiry of the jurors individually on the subject under inquiry, but specifically saved to defendant the right to so inquire as to any who answered in the affirmative to the general question put to the whole panel. We think it clear it is this ruling that is the subject of defendant's attack. But if not, it is manifest that the ruling on the second matter, i. e., undertaking to ask each juror how he would vote in the circumstances there delineated, was not an improper exercise of the court's discretion in determining the qualifications of the prospective jurors.

■■ The next assignment charges the court erred in permitting the state, on cross-examination of the defendant, to go outside of the matters referred to in his examination in chief, in violation of § 546.260. The matter especially complained of is that of eliciting admissions from the defendant of his ten previous felony convictions in various parts of the country. Here defendant invokes § 556.280 defensively and as a shield against inquiry into the facts upon which the habitual criminal charge is founded because that issue is triable to the judge in the absence of the jury. In the Morton case, supra, the defendant was tried under the 1959 amendment to § 556.-280, and on hearing out of the presence of the jury the trial judge found defendant had been previously convicted of two felonies, and in each instance sentenced and imprisoned therefor. The defendant took the stand in his own behalf, and the state was permitted to elicit from him the fact that he had been previously so convicted, although there, as here, nothing concerning such prior convictions had been brought out on direct examination. It was held proper in those circumstances to cross-examine the defendant with respect to his former convictions. We think it quite apparent that it was not the legislative intent in repealing and reenacting § 556.280 in 1959, to repeal by implication those provisions of §§ 546.260 and 491.050 which re-

spectively provide that if a defendant becomes a witness in his own behalf, he may be contradicted and impeached as any other witness, and a person convicted of a criminal offense is, notwithstanding, a competent witness, but the conviction may be proved to affect his credibility either by the record or by his own cross-examination. The contention is disallowed.

■ Lastly, it is urged that the punishment is "exorbitant and grossly excessive under the evidence and similar cases reviewed by this court," citing State v. Greer, Mo., 313 S.W.2d 711, and State v. Turner, Mo., 274 S.W. 35. These cases are merely examples of where lesser punishment has been assessed for the offense here involved. But see State v. Ward, 337 Mo. 425, 85 S.W.2d 1, as a contrary example (where the death penalty was assessed by the court upon failure of the jury to agree on punishment in a rape case). See, also, State v. Ashworth, 346 Mo. 869, 143 S.W.2d 279, where such punishment was assessed on a plea of guilty to a charge of kidnapping a 7 year old girl, wherein the defendant apparently also confessed to having raped the child. Consequently, it appears that the fact punishment will vary widely in such cases is of no significance on the point now urged.

While technically not a part of the record, nevertheless there has been incorporated in the transcript on appeal the trial court's "memorandum of court's grounds for decision as to assessment of punishment," and because it so clearly and forcefully elucidates the considerations which seemed to the court to impel the infliction of the particular penalty assessed, we set it forth, as follows:

"The Court has considered, as dispassionately as human frailty permits, its obligation to the defendant, the prosecutrix, and more importantly, to the public.

"The Court has considered the element of reformation of the defendant.

The record is void of any indication of basic strength of character upon which reformation could be based.

"The Court has considered the question of the necessary protection to be afforded the public from further depredations by the defendant. Clearly, the record here warrants a permanent separation of this defendant from all law-abiding citizens.

"The Court believes that one of the purposes of punishment is the effect it will have upon others who are inclined to commit similar offenses. By the punishment assessed in this case, the Court is speaking to them, telling them what they may expect from the law if they commit the crime of raping a child of tender years.

"The Court has searched the record for mitigating circumstances. The defendant sought feebly to show the use of narcotics as an excuse, but the law will not countenance one crime as an excuse for another.

"Instead of the record showing mitigation, it is replete with aggravation:

"(1) The defendant is not a youth, but is a man of maturity, both in body and mind.

"(2) He is not new to crime, but has a criminal record stretching back to his boyhood. He is a confirmed criminal.

"(3) His offense was not committed in passion but deliberately and with malice long aforethought, in a manner known by him to result in grievous injury to his victim. It was cowardly and brutal.

"The law of Missouri is the law of its people, and through their Legislature they have expressed their will that the crime of rape is punishable by imprisonment or by death.

"The penalty should fit the crime and should fit the defendant. Here,

the crime of rape was committed in its most hideous form, upon a helpless child. Nor can the Court find anything in the character of the defendant that is deserving of the Court's mercy. So, we have here a case where both the nature of the crime and the criminality of the defendant are extreme. A review of cases in Missouri and other states shows the propriety of the extreme penalty. State v. Thurston, Missouri, 242 S.W. 908; Klander v. State, Texas [148 Tex.Cr.R. 218], 186 S.W.2d 250; Lowery v. State, Maryland [202 Md. 314], 96 Atl.2d 20; Palmer v. State, Arkansas [213 Ark. 956], 214 S.W.2d 372; Holmes v. U. S. (Dist. of Columbia) [84 U.S.App.D.C. 168], 171 Fed.2d 1022. So, the Court feels it would be derelict in its duty in assessing anything less than the maximum penalty; and the finding of the Court as to the punishment to be assessed upon the defendant will be death in the gas chamber."

The precise point now urged on excessiveness of punishment was directly ruled against the contention made by this defendant (as it had been on several previous occasions) in State v. Burton, 355 Mo. 792, 198 S.W.2d 19, 23, in this fashion: "The sentence is claimed to be excessive because it is more severe than sentences in similar cases. Under the statute, Section 4393, R.S. 1939, Mo.R.S.A., the punishment for statutory rape ranges from death to two years imprisonment. This court has ruled that when the punishment assessed is within the range prescribed by statute, it cannot be adjudged to be excessive by an appellate court. State v. Alexander, 315 Mo. 199, 285 S.W. 984; State v. Copeland, 335 Mo. 140, 71 S.W.2d 746; State v. Rizor, 353 Mo. 368, 182 S.W.2d 525." See, also, State v. Stubblefield, 157 Mo. 360, 58 S.W. 337; State v. Pine, Mo., 18 S.W.2d 48; State v. Jenkins, 327 Mo. 326, 37 S.W.2d 433.

We have examined the information, verdict, judgment and sentence, and find no reversible error therein.

It should be noted that counsel for defendant served as such by appointment of the trial court. They did not cease their efforts at the trial court level, but have been of material assistance to this court in following the case, and briefing it on appeal, and otherwise diligently discharging the onerous duties devolving upon them under their appointments.

From what has been said it follows that the judgment must be, and it is, affirmed, and, under Rule 28.14, V.A.M.R., it is directed that the sentence pronounced be executed.

All concur.