**STATE of Missouri, Respondent,**

**v.**

**Robert BROWNRIDGE, Jr., Appellant.**

**No. 48607.**

Supreme Court of Missouri,

Division No. 1.

Feb. 12, 1962.

**716**

Joseph B. Moore, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Theodore C. Beckett, Sp. Asst. Atty. Gen., for respondent.

HOUSER, Commissioner.

Robert Brownridge, Jr., was charged by indictment and convicted by a jury of the crime of forcible rape. Section 559.260, RSMo 1959, V.A.M.S. The trial judge found the fact of prior conviction, sentence and imprisonment on previous felony charges under the Habitual Criminal Act, Section 556.280, RSMo 1959, V.A.M.S., and fixed the punishment at imprisonment in the penitentiary for 99 years. Defendant's counsel prepared and filed a motion for new trial, which was overruled. After the pronouncement of judgment defendant appealed to this Court.

The state introduced evidence of these facts: On July 29, 1960 at 1 or 1:30 o'clock a. m. in Forest Park in the City of St. Louis appellant, one Joe Henry Brooks and one Thomas Allen approached a parked car in which prosecutrix, a 26-year-old married woman, and one William Ruehmann were sitting. One of the three men said "What are you doing out at 1:30 in the morning with this bitch?" Appellant displayed a pistol. The occupants were forced out of the automobile. Directly across the street there was a street light. Prosecutrix could see the faces of all the men clearly. At gun point appellant forced prosecutrix and Ruehmann away from the place where the car was parked. With his fist appellant hit Ruehmann, reached into his pockets, took out his pocket change and asked if he had any other money. Ruehmann said he had a wallet in the car. The men took Ruehmann's Timex wrist watch with a black band. Allen took prosecutrix 100–150 feet away from the group, down a hill, threw her to the ground, and tried without success to have sexual intercourse with her. Then through Allen's and appellant's combined efforts her panties were removed, and appellant had a complete act of intercourse with her, without her consent, against her will, and in spite of her resistance. The intimate details appear in the transcript and need not be restated in this opinion, except to say that when prosecutrix screamed appellant placed both hands on her throat, choked her and struck her in the face. Ruehmann ran, was caught by Brooks, beaten and brought back. One of the men told Brooks to use a knife on Ruehmann. Then appellant held prosecutrix' legs while Allen had intercourse with prosecutrix. Appellant thereafter tried to

kiss prosecutrix, and said "Give me some tongue." Appellant removed her gold wrist watch, with an expansion band. Then Allen and appellant held prosecutrix' legs while Brooks had intercourse with her. The three then quit and went toward Ruehmann's car. Prosecutrix and Ruehmann hid in the nearby underbrush. Several minutes later they saw another car come up and shine its headlights on Ruehmann's car. Fearing that the newcomers were confederates, prosecutrix and Ruehmann fled through the trees and underbrush and by way of the bridle path to the Express Highway, where they hailed a police patrol car and reported what had happened. Another patrol car was summoned. They re-entered the park and went to Ruehmann's car. Ruehmann's wallet was missing. Officers in another patrol car had seen three negro men in the park, running north in the vicinity of Ruehmann's parked car. The police gave chase, calling for them to stop, and fired a warning shot. The three men stopped, turned, faced the light, and then fled. Two escaped, but one (Brooks) was arrested. He was carrying a knife. A few minutes later the arresting officer encountered the victims, who were then in the police cruiser. Prosecutrix and Ruehmann saw and identified Brooks as one of their assailants. In effecting their escape appellant and Allen forcibly took an automobile belonging to one Wilford Adams, parked in front of Deaconess Hospital near Forest Park. Several hours after the robbery appellant gave his cousin a Timex watch with a black band, a lady's gold wrist watch with an expansion band, and a pistol, all in a paper bag, with instructions to hold them for appellant. Later the cousin delivered the paper bag and its contents to appellant. Allen was arrested at his place of work the following day. Shortly thereafter Allen was identified by prosecutrix, Ruehmann and two policemen, as one of the persons observed by them in Forest Park the previous night. Prosecutrix saw and identified Brooks and Allen at the police station the next day. Appellant did not report for work on the day after the attack. On July 30 appellant was arrested by the FBI in East St. Louis, Illinois. A search disclosed a loaded .32 caliber pistol on his person, similar to that used in the rape-robbery. When appellant was arrested prosecutrix went to the police station, where she saw and positively identified him. The officer who arrested Brooks at the scene identified Allen and appellant as the two men who escaped in the park. Appellant had previously been convicted and served sentences for larceny of a motor vehicle, larceny from the person, rape and carrying a concealed weapon.

Appellant took the stand, admitted the previous convictions, admitted that he participated in the robberies of Ruehmann and prosecutrix, his use of the pistol, and that Brooks and Allen attacked prosecutrix. He testified as to the arrival of the officers, the flight, the firing of shots by the officers, his escape, and his forcible taking of the Adams automobile. He denied that he took part in the rape, and claimed that after robbing Ruehmann he told Brooks and Allen "to leave the lady alone." He could see prosecutrix lying on the ground, with either Brooks or Allen "trying to molest her." Appellant further testified that when the police arrived he went to Ruehmann's car, intending to drive it away, but there were no keys in it. He shouted to the other men, and the three ran, encountering policemen at the Art Museum, where shots were fired. Appellant admitted that when arrested he lied by denying he was in Forest Park that night and stating he had never seen Ruehmann or prosecutrix.

Appellant having filed no brief we will examine one by one the eleven assignments of error contained in appellant's motion for new trial.

There was no deprivation of the constitutional rights of appellant, a negro, in the selection of the jury by reason of the fact that there were 56 Caucasians and only 4 negroes on the petit jury panel. There was no showing of any systematic

or intentional exclusion of members of appellant's race or selection of the jurors on racial grounds. See in this connection State v. Logan, 344 Mo. 351, 126 S.W.2d 256, 122 A.L.R. 417. The lack of proportional representation of races on a jury panel does not constitute purposeful discrimination. Akins v. Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692; Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839. Proportional representation is not required. United States v. Charles Kazuyuki Fujimoto, D.C.Hawaii, 1952, 105 F.Supp. 727; Anno., 1 A.L.R.2d 1291, § 11, p. 1316.

■ The infliction of a 99-year sentence, although severe, did not constitute cruel and unusual punishment within the inhibition of Article I, Section 21, Constitution of Missouri, 1945, V.A.M.S. A punishment is not cruel and unusual because of its duration unless so disproportionate to the offense committed as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances. 15 Am.Jur. Criminal Law, § 535. A punishment is not cruel simply because it is severe. State v. Stubblefield, 157 Mo. 360, 58 S.W. 337, 339. The acts of appellant were so abhorrent and the circumstances so shocking that the severe punishment inflicted was fully justified.

■ Appellant's rights were not invaded by failing to cause the jury to assess the punishment, nor is the Habitual Criminal Act, Section 556.280, RSMo 1959, V.A.M.S., under which the judge and not the jury assessed the punishment, unconstitutional for the assigned reason that it deprived appellant of the right of trial by jury. These same questions recently have been settled contrary to appellant's contentions. State v. Wolfe, Mo.Sup., 343 S.W. 2d 10, and cases cited, certiorari denied 366 U.S. 953, 81 S.Ct. 1912, 6 L.Ed.2d 1246. Section 556.280, supra, does not violate the Sixth Amendment to the Constitution of the United States, as claimed. That amendment has no application to trials in state courts. It applies only to trials in federal courts. Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595.

A page by page review of the transcript fails to reveal anything which in any manner substantiates appellant's general and unsupported charge that the trial judge was prejudiced against appellant, "as exhibited by his mannerisms during the trial which might have indicated to the jury that the Court believed the defendant to be guilty prior to the completion of the evidence in the case."

■ Appellant was not prejudiced by the admission in evidence of other offenses committed by appellant on the occasion in question (robbery of prosecutrix and her companion, and theft of a motor vehicle). These offenses were properly shown for the purpose of proving the identity of appellant. On cross-examination appellant admitted that when first arrested he denied his presence at Forest Park at the time of the rape and denied that he had ever seen prosecutrix.

■ There was no error in admitting evidence that appellant had in his possession a pistol similar to State's Exhibit No. 15 at the time of the commission of the rape, or in introducing this exhibit before it was shown to have been in his possession. On cross-examination appellant admitted that Exhibit No. 15 was the gun he had with him at the time of the crime. It was introduced in evidence and identified by other witnesses as similar to the one appellant had in his possession at the time of the rape. The pistol was clearly admissible to show availability to the accused of the means of committing the crime in the manner in which it was shown to have occurred, and to assist in showing the manner in which it was committed. State v. Pruett, Mo.Sup., 342 S.W.2d 943; State v. Richetti, 342 Mo. 1015, 119 S.W.2d 330; 22A C.J.S. Criminal Law § 712.

■ Nor did the court err in admitting in evidence the large aerial photograph of

a section of Forest Park. The photograph was of assistance in aiding witnesses in their descriptions of the occurrences which took place at the scene of the crime and during appellant's flight from the scene. 23 C.J.S. Criminal Law § 852(1) and § 853 (1).

 Appellant's charge that Instructions Nos. 2, 3, 3–A, 4 and 5, "when read as a whole * * * do not inform the jury as to the facts to be found before it can convict the defendant as charged in the indictment" is without any foundation. The instructions properly "defined the elements of the crime of rape as charged in the indictment." Instruction No. 2 was a proper instruction with reference to the commission of a crime by two or more persons acting jointly, aiding and abetting, etc. Instruction No. 3 required a finding of the forcible ravishing of prosecutrix, and that she was a woman over the age of sixteen years, in the language of the indictment, which charged forcible rape in the language of Section 559.260, RSMo 1959, V.A.M.S. The words "unlawfully," "feloniously," "forcibly ravish," "carnally know," and "sexual intercourse," as used in the instructions, were each carefully and properly defined in approved form. Instruction No. 3–A, relating to the elements of utmost resistance and putting in fear, was a proper statement of the law. Instruction No. 4 properly cautioned the jury with respect to the three indispensable elements of rape: assault and sexual intercourse, i. e. penetration, properly defined; penctration by force and against the will of the woman; lack of consent and utmost resistance. Instruction No. 5 more fully defined the term "forcibly" and more fully declared the effect of threats of bodily harm upon the overcoming of the volition of a woman. Proper instructions on the presumption of innocence and the state's burden of proof were given.

We have examined the indictment, verdict, judgment and sentence, under the requirement of Rule 28.02, V.A.M.R., and find them sufficient in form and substance.

The judgment is affirmed.

COIL and HOLMAN, CC., concur.

.PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the judges concur.