**STATE of Missouri, Respondent,**

v.

**William McCAINE, Appellant.**

**No. 55198.**

Supreme Court of Missouri,
Division No. 1.

Nov. 9, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 14, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Beckemeier & Beckemeier, St. Louis, for appellant.

HOUSER, Commissioner.

William McCaine, convicted by a jury of robbery in the first degree by means of a dangerous and deadly weapon and sentenced to 17 years' imprisonment, has appealed. Neither of the four points raised by his counsel requires reversal of the judgment of conviction, which we affirm.

## I.

The court did not err in refusing inspection of the testimony of the witnesses before the grand jury. Criminal Rule 24.24, V.A.M.R., provides for such disclosure "upon a finding of necessity to meet the ends of justice" or "upon a particularized showing by the defendant that grounds may exist for a motion to dismiss the indictment because of matters occurring before the Grand Jury." Defendant did not *allege* facts showing a necessity of inspection in order to meet the ends of justice, did not *prove* any such necessity (made no proof whatever), and the court had nothing before it upon which it could reasonably find any such necessity. The motion alleged defendant's need of the witnesses' testimony "because, if consistent with statements made by them in the presence of defendant prior to said hearing, they would tend to exonerate defendant and would show that the state lacks evidence necessary to make a case against defendant and would furnish grounds for a motion to dismiss the indictment." Other recitals in the motion inferred that the object was discovery and to obtain inconsistent or exonerating statements and favorable evidence. The assigned reasons were conclusory in nature. The character and content of the alleged statements were not revealed. The motion did not allege how or wherein the statements would tend to exonerate defendant or demonstrate the insufficiency of the evidence to make a case against him. The allegations of the motion did not prove themselves. Defendant simply did not provide the court with any basis upon which to make a ruling favorable to him on this matter.

Defendant was not entitled to inspect the grand jury transcript for purposes of discovery or as a substitute for taking depositions of witnesses. State ex rel. Clagett v. James, Mo.Sup., 327 S.W.2d 278, 290 [9]; State v. Martin, Mo.Sup., 428 S.W.2d 489, 492; 1961 Wash.U.L.Q.

382, 394. From the motion it appears that defendant had the names of the witnesses in question; had been told by them what they knew about the case and therefore knew what they might be expected to testify to at the trial. Defendant could have taken their depositions under the authority of § 545.400, V.A.M.S. and Criminal Rule 25.10, to be used conditionally, or if he lacked funds for that purpose could have taken the depositions of the witnesses upon written interrogatories, as suggested in State v. Aubuchon, Mo.Sup., 381 S.W.2d 807, 813. Defendant did not show the circuit court and has not shown this Court that he was prejudiced by the refusal to require production of the grand jury minutes.

There is no force in the suggestion that the testimony would have furnished grounds for dismissal of the indictment: the indictment had been dismissed and a substitute information filed three weeks prior to the time the motion was presented to the court. Although the motion had been filed for more than three months it was not presented to the court until the fifth setting of the case for trial, the second special and the second peremptory setting—not until the morning of the trial, after the jury had been called. Criminal Rule 25.06(b) requires defenses and objections based on defects in the institution of the prosecution or in the indictment or information (other than that it fails to show jurisdiction or to charge an offense) to be raised by motion *before trial*.

Defendant charges that the equal protection of the laws clause of the Fourteenth Amendment was violated; that persons prosecuted via information are entitled to a preliminary hearing at which in the City of St. Louis a record of the testimony, available as a public record, is made but that persons prosecuted via indictment following a secret grand jury hearing are deprived of the privilege of reviewing the evidence brought forth

against them and whether it is consistent with the evidence given at the trial. Defendant says this places him at a distinct disadvantage and violates the Constitution. This point is disallowed. There is no requirement (except in cases of homicide, Criminal Rule 23.12, V.A.M.R. and § 544.-370, R.S.Mo 1969, V.A.M.S.) that evidence at a preliminary hearing be reduced to writing. State v. Benison, Mo.Sup., 415 S.W.2d 773, 776 [5]. The fact that proceedings at preliminary hearings are transcribed in the City of St. Louis by local rule or practice [a fact asserted in defendant's brief on appeal but not substantiated in this record] does not establish an unconstitutional discrimination between those prosecuted via information and those prosecuted via indictment. There are reasons for a distinction between the two. One is the policy of secrecy surrounding proceedings before grand juries. Safeguards and limitations on disclosure of the proceedings of that body have been provided by law for good and sufficient reasons. The provisions of Criminal Rule 24.24 delimiting the circumstances and conditions and providing the procedure for opening up those records in proper cases are sufficient to satisfy the constitutional rights of the affected citizen.

## II.

■ The 17-year sentence was not excessive and did not amount to cruel and unusual punishment in violation of Art. 1, § 21, Constitution of Missouri, 1945, or Amendment VIII of the Constitution of the United States, and it is immaterial that a codefendant received punishment of 5 years' imprisonment and that the robbery netted defendant nothing and netted the codefendant only $3.09. Generally, these constitutional provisions refer to the statute fixing the limits of punishment for an offense and not to the individual assessment of punishment by judge or jury within the statutory limits in a particular case. State v. Thompson, Mo.Sup., 414 S.W.2d 261, 268 [6]. When the punishment assessed is within the range prescribed by statute it cannot be adjudged excessive by an appellate court. State v. Burton, 355 Mo. 792, 198 S.W.2d 19, 23. A punishment is not cruel simply because it is severe. State v. Stubblefield, 157 Mo. 360, 58 S.W. 337, 339. "A punishment is not cruel and unusual because of its duration unless so disproportionate to the offense committed as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances." State v. Brownridge, Mo.Sup., 353 S.W.2d 715, 718 [4]. Defendant, convicted of robbery in the first degree by means of a dangerous and deadly weapon (a knife) under the Habitual Criminal Act, had six prior felony convictions. The trial judge at first determined to assess a 20-year term, but later fixed the punishment at 17 years. The minimum punishment for this offense is 5 years' imprisonment; the maximum, death. § 560.135, V.A.M.S. Life imprisonment has been held not cruel and unusual punishment upon conviction of this offense and two prior felony convictions. State v. Eckenfels, Mo.Sup., 316 S.W.2d 532. In State v. Brownridge, No. 48,607, handed down concurrently with this opinion, this Court holds that the fact that two codefendants received 15-year sentences for the crime therein involved whereas defendant was given 99 years' imprisonment does not violate defendant's right to equal protection of the laws or establish that the sentence inflicted upon him is cruel and unusual.

■ Defendant says that the court decided on its assessment of punishment "largely on the basis of defendant's exercise of his rights." The meaning of this statement is not clear. If it is meant to suggest that the court acted improperly in any respect the suggestion is untenable. A reading of the record demonstrates that the trial judge acted in every respect with judicial propriety and after giving full consideration not only to the rights of defendant but also to the convenience of defendant and his counsel. Comment is made

upon the court's disinterest in probation but that is understandable in this case, having in mind that probation is reserved for persons of previous good character, § 549.071, V.A.M.S.; that defendant was a six-time loser, and that defendant had a previous order of probation revoked.

### III.

▮ Certain questions asked on voir dire examination by the assistant circuit attorney, to which no objection was made by defendant's counsel, were not in form or substance reversibly erroneous on the assigned ground that thereby prospective jurors were asked to commit themselves to convict; were not so apparently erroneous and damaging as to require court intervention without objection, and do not require invocation of Criminal Rule 27.20 (c) [the plain error rule]. The following took place before the entire panel: " * * * [I]n every criminal case, and, of course, this case is no exception, every defendant that comes into the courtroom is presumed innocent, and the burden of proving every defendant in every criminal case guilty always rests with the State. * * * In the event this defendant is proved guilty under the law, any jurors on the first panel have any adverse reaction to returning a guilty verdict, or, the other side of the coin, if he is found guilty under the law, would there be any hesitancy of returning a guilty verdict?" During further questioning each individual venireman was asked this question: "If the defendant is proved guilty under the law, any reason you could not return a guilty verdict in the case?"

It is urged that the asking of these questions constituted reversible error; that they called for a commitment to find defendant guilty before it heard the evidence; that the trial judge should have intervened without the necessity of objection by counsel, and that this court should intervene under the plain error rule. It is safer practice not to engage in this type of interrogation and a prosecutor who does so

is skating on thin ice. A negative answer to these particular questions, however, could not reasonably be construed by a prospective juror to constitute a personal commitment to decide the case for the State. We cannot in conscience say that this defendant was thereby deprived of his constitutional right to trial by a free, unfettered, impartial jury. The questions asked in this case are remarkably similar to those challenged but upheld in State v. Gray, Mo.Sup., 423 S.W.2d 776, 781 [6], wherein, after stating that the burden of proof was on the State the prosecutor continued, " ' * * * assuming that the state from the evidence has shown beyond a reasonable doubt that Mr. Gray did commit the alleged act, are there any of you here, based upon this assumption, who could not return a verdict of guilty?' "

Here, as in the Gray case, the questions hypothesized no particular set of facts. They were based upon an assumption of proof of guilt under the law. They appear to have been "merely an attempt to determine if the jury panel had any moral scruples against returning a verdict of guilty, not one attempting to commit the jurors in advance of hearing any evidence, arguments of counsel or instructions of the court." State v. Gray, supra, 423 S.W.2d, 1. c. 781, 782. We notice that the last question was not whether there was any reason the prospective juror *would* not return a guilty verdict but whether there was any reason he *could* not do so. The difference in the wording is significant, as pointed out in Handshy v. Nolte Petroleum Co., Mo.Sup., 421 S.W.2d 198, 201 [3]. As in the Handshy case, so here, it appears that counsel was trying to find out whether any prospective juror had views which would prevent him from returning a guilty verdict in this case *in any event*. The case is unlike State v. Kiner, Mo.Sup., 441 S.W.2d 720, where the questions were whether there was " * * . * any reason you could not and would not vote to find him guilty?" and " * * * could you and would you vote to find him guilty?" The case also differs from

State v. Katz Drug Company, Mo.Sup., 352 S.W.2d 678, where after the lead words the question was, "* * * will you convict?" No such advance commitment is involved in the case now being reviewed.

IV.

██ There was no error in failing to instruct the jury that defendant's refusal to make an exculpatory statement to the police was not to be considered by the jury.

Four arresting police officers testified [on direct examination in the State's case] as to the chase and capture of defendant, who fled from the scene of the crime upon the approach of the officers. They testified that after defendant and another who fled with him were captured the two were handcuffed, searched, etc. but the officers were not asked on direct examination by the prosecution whether defendant refused to talk. On cross-examination, however, *defendant's counsel* asked each of the four arresting officers questions by which these facts were elicited: that after arrest defendant made no statement, made no voluntary statement or statement "to the effect that he wasn't involved in any robbery," and that defendant was not questioned by the officers except he was asked to give his name and address. Defendant's defense was that he was an innocent passerby who did not participate in the robbery but merely happened along at the time and place of the crime. He sought to establish this defense by the testimony of Leon Cross, who had pleaded guilty to the crime and was brought from the penitentiary to testify in the case. Cross testified that he tried to tell the police that defendant was not involved but they would not listen. While the prosecutor was cross-examining Cross on this phase of the case, and after the prosecutor asked him whether he, Cross, refused to answer questions put to him by the police after the arrest, Cross volunteered that defendant "was trying to tell them." Defendant's counsel made no objection to that volunteered statement, nor

to the following questions and answers: "Q Did you hear the defendant make any statement to the police at this time? You said he told the police? A No, I think he was trying to explain to them that he wasn't good for it. Q And you heard him explaining it to the police? A Yes. And I was trying to tell them. He was pushing us around and moving us. Q You told that to the police, you both explained this story to the police at the station; is that your story? A Yes. * * *"

To rebut the testimony of Cross that he tried to tell the police officers that defendant had nothing to do with the crime the State called Officer Hall, who was permitted to testify over objection that Cross, given an opportunity to make a statement after having been advised of his constitutional rights, made no statement. Immediately thereafter the prosecutor asked Officer Hall whether defendant William McCaine, both at the scene and at the police station, after being advised of his constitutional rights, was given an opportunity to make a statement, to which the officer testified that defendant was given such an opportunity and that "he refused." Defendant's counsel made no objection to the questions and answers concerning defendant, but in an effort to minimize the situation defendant's counsel cross-examined Officer Hall on the surrounding circumstances.

Defendant's counsel requested the court to give an instruction that defendant was not required to make a statement. The court refused on the ground that the testimony was invited and that no timely objection had been made. Defendant's motion for new trial complained that the trial court committed plain error in allowing the State to adduce rebuttal evidence referring to defendant's failure to make an exculpatory statement, not promptly excluding the evidence, and not instructing the jury that defendant's failure to make an exculpatory statement should not be considered in their deliberations. On appeal defendant's counsel concedes that

"there was little the trial court could be expected to have done at the time the questions were asked" and now contends only that the court should have undone the harm by giving the suggested instruction. Citing People v. Mleczko, 298 N.Y. 153, 81 N.E.2d 65, defendant contends that the testimony was damaging and prejudicially erroneous; that defendant's silence was especially harmful in view of the store owner's identification of defendant both at the scene of the crime and at the police station. Without in any way denigrating the salutary rule stated in State v. Bowdry, 346 Mo. 1090, 145 S.W.2d 127, 130, and reiterated in State v. Dowling, 348 Mo. 589, 154 S.W.2d 749, and numerous cases thereafter, as late as State v. Stuart (1970), Mo.Sup., 456 S.W.2d 19, 22 [3], that the silence of an accused while under arrest is not admissible against him because he is under no duty to speak, a defendant may waive the benefit of the rule by inviting the error. Thus, in State v. Yager, Mo. Sup., 416 S.W.2d 170, 172, "defendant himself brought out this testimony first," by cross-examining the State's first witness and by continuing the same line of cross-examination with other witnesses. In that case, from the cross-examination and the references made to the subject in defendant's final argument to the jury the Court concluded that defendant purposely chose not to object to this testimony as a part of defendant's trial strategy and declined to invoke the rule for these reasons. Likewise in this case, the subject was first broached by defendant on cross-examination of the first of the police officers to testify for the State, and was persisted in with the next three of the State's witnesses. When the inadmissible evidence was thus elicited defendant made no effort to exclude it, nor did he object when it was brought out in cross-examination of defendant's witness Cross. He invited Officer Hall's testimony on rebuttal and when that testimony turned out to be unfavorable defendant's counsel made no objection, but sought to explain it away by cross-examining Officer Hall with respect to the surrounding circumstances. In this situation defendant may not now claim the benefit of the rule of State v. Dowling, or of the plain error rule, because he invited the evidence, waived objection thereto and joined with the prosecution in developing the matter by attempting to clarify the testimony of Cross.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

HOLMAN and BARDGETT, JJ., concur.

SEILER, P. J., concurs in result.