81 N.J. Super. 40 (1963)
194 A.2d 578
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANTHONY LaROCCA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1963.
Decided October 29, 1963.
*42 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Nicholas L. Santowasso argued the cause for appellant (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. William D. Danberry argued the cause for respondent (Mr. Edward J. Dolan, Middlesex County Prosecutor, attorney; Mr. Danberry, on the brief).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant Anthony LaRocca appeals from a judgment of conviction resulting from a jury verdict on the trial of two indictments, consolidated for the purpose of trial, each charging him with the crime of open lewdness in violation of N.J.S. 2A:115-1. He makes no contention that the verdict was against the weight of the evidence, but asserts two rulings by the trial judge were erroneous and warrant the granting of a new trial. He also appeals from a denial of a motion made subsequent to the verdict wherein leave was sought under R.R. 1:25A to permit his counsel to interview, examine or question members of the jury with respect to said verdict.

I.
We consider first the post-conviction motion and the court's ruling thereon reported in 72 N.J. Super. 322 (Cty. Ct. 1962). In denying the motion to interview jurors, the court stated that no allegations were submitted to show any misconduct had occurred during the jury's deliberations of such a nature as to vitiate the verdict, and that no evidence was offered in support of the allegations that the verdict was prejudiced by the taint of extraneous influence.
Defendant argues that at the time of trial there existed extraneous factors which may have prejudiced the jury in its deliberations and consequently the trial judge was required to interview the jurors. He contends that defendant need only *43 allege, with some degree of probability, that extraneous influences may have been present and that such influences, if established upon inquiry of the jury, would be sufficient to set aside the verdict. He asserts that the court's ruling denied him an opportunity to expose such extraneous influence upon the jury.
R.R. 1:25A provides as follows:
"No attorney shall himself or through any investigator or other person acting for him interview, examine or question any juror with respect to the verdict or deliberations of the jury in any action except on leave of court granted upon good cause shown." (Emphasis added)
Defendant's counsel alleged that sometime prior to the trial the defendant had been indicted, tried and acquitted on a similar charge; that prior to and at the trial of the present indictments widespread publicity was given by local newspapers concerning the charges. He contends such publicity provoked intense indignation resulting in bias and prejudice against the defendant. He pointed out that one juror, Mary Brodell, admitted on her voir dire she had read such newspaper articles. For these reasons he argues he should have been permitted to interview the jurors to ascertain whether such extraneous information influenced their verdict.
The record indicates extreme care was undertaken in the selection of the jury. Prospective jurors were examined individually on the voir dire out of the presence of both the jury panel and other jurors who were selected to hear the case. All jurors stated they did not know the defendant and had not read any newspaper articles concerning him except Mrs. Brodell.
On her voir dire examination this juror recalled having read in a newspaper that defendant had been charged with molesting children. She said that the fact she had read such articles would not prejudice her, and that she would be able to decide the case on the evidence presented at the trial. Having so stated, a challenge for cause would not have been sustained. State v. Collins, 2 N.J. 406 (1949); State v. Simmons, *44 120 N.J.L. 85 (E. & A. 1938); State v. Overton, 85 N.J.L. 287 (E. & A. 1913). The defendant did not attempt to challenge her for cause nor did he exercise a peremptory challenge. Instead, he indicated satisfaction, and accepted her as a juror to hear the case. He cannot now be permitted to attempt to overturn the jury verdict because he allowed this juror to be selected. To do so would render the voir dire meaningless.
In the cases relied upon by defendant there were supporting affidavits or credible information brought to the attention of the trial judge indicating that improper, prejudicial, extraneous factors had been injected into the jury's deliberations or that there had been a failure on the part of a juror to disclose material facts on the voir dire. Thus in State v. Levitt, 36 N.J. 266 (1961), one of the jurors informed the court of statements made by other jurors indicating religious prejudice; in State v. Kociolek, 20 N.J. 92 (1955), the affidavit of a juror was submitted revealing improper discussion of another indictment against the defendant; in State v. Johnson, 34 N.J. 212 (1961), and Johnson v. Yeager, 38 N.J. 319 (1962), there was evidence a juror had failed to disclose on the voir dire that her husband had been a victim of a robbery; in Brandimarte v. Green, 37 N.J. 557 (1962), it was revealed that a representative of an insurance company had circulated among jurors of the general panel during the trial making statements that the defendant was not insured.
The difficulty with defendant's position is that he made no charge or showing of impropriety on the part of any of the jurors and presented no credible information which would indicate that improper, extraneous factors were injected into the jury room. He sought to question the jurors on a mere possibility that they may have been prejudiced by the newspaper publicity which preceded the trial. If a defendant's counsel, upon his own suggestion of possible prejudice, were permitted to engage in a "fishing expedition" following an adverse verdict, no jury in any case could escape a probing by an unsuccessful party.
*45 Defendant herein did not show the good cause required under R.R. 1:25A to permit an examination of jurors in this post-conviction procedure. We find no error in the ruling of the trial court.

II.
Defendant claims the trial court committed reversible error in refusing to grant a mistrial and in refusing to strike evidence elicited by the prosecutor during the examination of a complaining witness, Dennis Lenart. The defense in the case was alibi. After having testified as to the description of the defendant at the time the offense was committed, the witness testified as follows:
"Q. And have you seen that man since that time? A. Yes.
Q. Where? A. When we went to police headquarters.
Q. When did you go to police headquarters? A. Oh, I think three or four days after that.
Q. And where did you see him at police headquarters? A. I saw him in pictures and picked him out of lineups."
Defendant immediately objected to such testimony, moved to strike and also moved for a mistrial. The court denied such motions.
We find no prejudicial error in the trial court's rulings. The answer of this 11-year old boy was not responsive to the precise question asked of him by the prosecutor. However, it is now well established in our State that a witness' prior out-of-court identification of an accused, if made under circumstances precluding suspicion of unfairness or unreliability, is admissible to corroborate the witness' identification of the accused at the trial. State v. Williams, 39 N.J. 471, 489 (1963); State v. Bennett, 75 N.J. Super. 207, 210-212 (App. Div. 1962).
Defendant alleges the boy's statement, that he saw him in "pictures" at police headquarters, injected a false premise for the consideration of the jury in that they were thus led to believe defendant had a prior criminal record. We see no *46 merit in this argument. If we were to assume that such pictures were taken by the police, it does not necessarily imply that defendant had previously been convicted of crime. We know that persons ultimately acquitted of crimes are required to be photographed and fingerprinted when arrested. See N.J.S.A. 53:1-15. Furthermore, the jury could have reasonably concluded that such pictures were taken in connection with the crimes charged in the present indictments.

III.
Defendant assigns as error the trial court's refusal to permit a witness to testify that he observed defendant's conduct upon his arrest and that defendant expressed a willingness to submit to a polygraph test.
The importance of this ruling is de minimis since it appears from our reading of the trial transcript defendant subsequently did testify, without objection, that he had been asked by police to take such a test and had stated he would. Such fact was not made known in the briefs or mentioned by counsel at the oral argument, as it should have been.
Defendant concedes that the results of a polygraph test are not admissible in evidence, either for or against the accused. State v. Driver, 38 N.J. 255, 261 (1962); cf. State v. Walker, 37 N.J. 208 (1962); State v. Arnwine, 67 N.J. Super. 483 (App. Div. 1961). He argues, however, that his offer of proof did not go to the results of such a test but rather to establish his state of mind, a consciousness of innocence. Defendant cites 2 Wigmore, Evidence (3d ed. 1940), § 293, p. 189 wherein the author concludes evidence of consciousness of innocence should be as freely admitted as is evidence of consciousness of guilt. Further, defendant contends that Commonwealth v. Sanders, 386 Pa. 149, 125 A.2d 442 (Sup. Ct. 1956), which expressly held evidence of a willingness to take polygraph examination was inadmissible, while cited in the Arnwine case, was not necessary for the court's decision.
Defendant reads Arnwine too narrowly. The court there held that evidence which indirectly showed the results *47 of the test was inadmissible. From testimony indirectly evincing results, it is a small step to the inference a jury might draw from testimony of a willingness or refusal to take the polygraph test.
The section of Wigmore on Evidence upon which defendant relies speaks of evidence of "consciousness of innocence" generally. While characterizing distrust of such evidence as improper, Dean Wigmore recognizes that such evidence is rejected because the conduct underlying the inference "is often feigned and artificial." Not only is this so, but a defendant's expressed willingness to take a polygraph test involves no risk to him. Should the State accept defendant's offer to take the test, the results are inadmissible. It was just this line of reasoning which led the Pennsylvania Supreme Court in the Saunders case to reject proof of defendant's willingness to undergo polygraph tests.
In Saunders the court stated:
"Since it is uniformly held that such a test is not judicially acceptable, * * *, it is obvious that neither a professed willingness nor a refusal to submit to such a test should be admitted. Defendant's offer was merely a self-serving act or declaration which obviously could be made without any possible risk, since, if the offer were accepted and the test given, the result, whether favorable or unfavorable to the accused, could not be given in evidence." (125 A.2d, at p. 445)
See also, State v. Kolander, 236 Minn. 209, 52 N.W.2d 458 (Sup. Ct. 1952), holding evidence of refusal to submit to the test inadmissible. Both Saunders and Kolander were cited in Arnwine. As defendant argues, neither case was essential to the court's decision. But, in our opinion, the reasoning contained in those cases is sound and should be applied to the case before this court.
We find no error in the proceedings below. Affirmed.