**Ronald S. BERRY, Petitioner,**

v.

**Harold R. SWENSON, Warden, Missouri State Penitentiary, Jefferson City, Missouri, Respondent.**

**Civ. A. No. 18753-3.**

United States District Court,
W. D. Missouri, W. D.

Nov. 12, 1970.

As Amended March 29, 1971.

## ORDER GRANTING PETITIONER LEAVE TO PROCEED IN FORMA PAUPERIS AND DENYING PETITION FOR HABEAS CORPUS

WILLIAM H. BECKER, Chief Judge.

Petitioner, a state convict confined in the Missouri State Penitentiary, petitions this Court for a writ of federal habeas corpus adjudicating as invalid his state conviction of the offense of robbery in the first degree. Petitioner also requests leave to proceed in forma pauperis. Leave to proceed in forma pauperis will be granted.

Petitioner states that he was convicted on his plea of guilty of the offense of robbery in the first degree; that he was sentenced on that conviction on December 6, 1967, in the Circuit Court of Jackson County, to a term of twenty-five years' imprisonment; that he did not appeal from the judgment of conviction or imposition of sentence; that he filed a motion to vacate, set aside or correct his sentence under Missouri Supreme Court Rule 27.26, V.A.M.R., which was overruled by the State trial court on July 10, 1968; that he appealed the overruling to the Missouri Supreme Court, which affirmed the judgment of the trial court on December 8, 1969 (Berry v. State, Mo., 447 S.W.2d 563); and that he was represented by counsel at his arraignment and plea, at his sentencing, on his postconviction motion and on his appeal therefrom to the Missouri Supreme Court.

Petitioner states the following as grounds for his contention that he is being held in custody unlawfully:

"Petitioner's plea of guilty to the charge of robbery herein was induced, unwillingly, unknowingly and unwillingly entered."

Petitioner states the following as facts which support the above grounds:

"In support of the foregoing, petitioner will rely on the records and transcripts of the original plea entry, the evidentiary hearing in the circuit

Ronald S. Berry, pro se.
No response required by respondent.

court on his Motion to Vacate the Judgment and Sentence under Rule 27.26 of the Missouri Supreme Court, hereto attached as petitioner's Exhibits A and B, and the Opinion of the Missouri Supreme Court.

"As evidenced by the transcript hereto attached as Petitioner's Exhibit A, and the Opinion of the Missouri Supreme Court attached as Petitioner's Exhibit B, petitioner has factually exhausted all available state court remedies with respect to the grounds herein alleged.

"On or about March 28, 1968, in Division Number 12 of the Circuit Court of Jackson County, Missouri, after a previous plea of guilty to robbery in the first degree December 6, 1967 (Tr. 49), petitioner filed his pro se Motion to Vacate Judgment, Set aside or Correct his sentence under Missouri Supreme Court Rule 27.26 (Tr. 2).

"Thereafter, Mr. Charles Wilson of the Legal Aid and Defender Society of Greater Kansas City, was appointed to represent petitioner on the motion (Tr. 11).

"The motion was called up for hearing on June 28, 1968, taken under advisement and subsequently overruled July 10, 1968 (Tr. 61).

"Notice of appeal was thereafter filed in forma pauperis (Tr. 65–67), granted, and subsequently perfected to the Supreme Court of Missouri (Exhibit B). The Judgment overruling petitioner's motion under Missouri Rule 27.26 was by the Supreme Court of Missouri affirmed, specifically overruling the grounds alleged therein and herein presented in its Opinion dated December 8, 1969 (Exhibit B) thereby exhausting all available State Court remedies.

"Petitioner alleged in his Motion to Vacate under Missouri Rule 27.26 and on appeal therefrom, as here, that his plea of guilty to the robbery first degree was induced, i. e., a product of trickery, that he was led to believe he would receive a sentence of 5 years, rather than 25, in exchange for the plea, and that the term of 25 years imprisonment was excessive, as compared to that of his co-defendant (Tr. 2–3).

"Evidence produced during the evidentiary hearing indicated petitioner was in fact led to believe, by his retained Attorney, Mr. Richard Beitling, rather than by prosecuting counsel [,] that he would receive a sentence of five years (Tr. 31), as shown by the testimony of Mr. Carl Watson (Tr. 12), Mrs. Essie Watson (Tr. 14–15), Mr. Beitling (Tr. 21–22), and petitioner himself (Tr. 31).

"Admittedly, there was extensive inquiry as to the voluntariness of petitioner's plea (Tr. 38). However, it will be noted that such inquiry as made *after* the trial court accepted petitioner's plea of guilty, not before, as required by Missouri Supreme Court Rule 25.04 (Tr. 40).

"After the trial court accepted petitioner's plea, sentencing thereon was postponed for 40 days (Tr. 48) (Page 2. Exhibit B) apparently at counsel's request. The postponement was purportedly for the purpose of judicial parole consideration, in spite of the fact that judicial parole cannot be considered for one charged with a crime of robbery, 549.080 R.S.Mo. 1959, and, in spite of the fact that one cannot be considered for such a parole or probation after having been convicted of a felony previous to the crime charged. 549.080, Supra.

"Petitioner's attorney was apparently not aware of Missouri Statute 549.080, supra, at the time he requested the pre-sentence investigation (Tr. 48). Nor was counsel aware of petitioner's prior criminal record, as it were, before advising the plea of guilty, or, for that matter, at any time prior to the trial court's reading of it (Tr. 21) (Tr. 52).

"The trial court, it will be noted, did not read the record of petitioner's prior arrests *before* accepting the plea

of guilty or advise petitioner or his counsel that he intended to rely upon such as a measure with which to guide the number of years petitioner was to receive. Nor did the trial court ask petitioner or counsel *after* he read the arrest record whether it was still his desire to enter the plea of guilty.

"Petitioner therefore submits that he has sustained the burden of proof placed upon him, that he has proven his attorney 'made a deal' of sorts at the time of his plea of guilty with someone that petitioner would receive a 5 years— '5 to 7' or '5 to 10' years sentence in exchange for the said plea, and should be granted the relief of the writ herein sought for the reasons stated."

The official report of the Missouri Supreme Court in affirming the judgment of the State trial court in overruling petitioner's Rule 27.26 motion, Berry v. State, *supra*, shows that petitioner raised in that court the contention "that his plea was not entered voluntarily within the meaning of Supreme Court Rule 25.04, V.A.M.R." (447 S.W.2d at 563) and that the contention was ruled adversely to petitioner upon its merits by that court. Petitioner's state remedies were thereby exhausted. White v. Swenson (W.D.Mo. en banc) 261 F.Supp. 42; Russell v. Swenson (W.D.Mo.) 251 F. Supp. 196; Cox v. Nash (W.D.Mo.) 226 F.Supp. 87.

 Further, the official records of petitioner's appeal to the Missouri Supreme Court from the overruling of petitioner's Rule 27.26 motion, which petitioner has attached to his petition and on which he states he relies, show that a full evidentiary hearing was held on his Rule 27.26 motion in the state trial court. When such a plenary hearing was held, this Court may rely upon the state trial court's findings of fact if they are reliably and specifically made. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; Noble v. Swenson (W.D.Mo.) 285 F.Supp. 385; Goodwin v. Swenson (W.D.Mo.) 287 F.Supp. 166, 167; Mountjoy v. Swenson (W.D.Mo.)

306 F.Supp. 379. The transcript of the proceedings on petitioner's Rule 27.26 motion in the state trial court, which is relied on by petitioner, shows that the State trial court made the following findings of fact, among others, in overruling petitioner's Rule 27.26 motion:

"The transcript of movant's plea, which is part of the files and records of the criminal case, and therefore of this proceeding also, indicates, and this Court so finds, that movant admitted being in a Kroger grocery store located at 2624 Independence Avenue, Kansas City, Jackson County, Missouri, on July 29, 1967, with a pistol and taking in excess of fifteen hundred dollars from the manager of said store and then being arrested in the store by police officers.

"Movant was aware of his right to trial by jury, knew that his attorney would represent him in trial and did not desire a trial.

"There was no promise made by any representative of the State that movant would receive only a five year sentence if he entered a plea of guilty.

\* \* \* \* \* \*

"Prior to the voluntary plea of guilty made by movant to said charge, the movant was fully advised of the minimum and maximum punishment that could be assessed by the Court on his said plea of guilty to the charge of Robbery in the First Degree. And the Court finds that said plea of guilty by the movant with movant's full knowledge of the minimum and maximum range of punishment for said charge voluntarily entered his plea of guilty to said charge of Robbery in the First Degree after first voluntarily admitting to the commission of such crime, including the statement in the record of the actual facts relating to said crime and which constituted all of the essential elements of the charge against the defendant of the crime of Robbery in the First Degree.

"That no promises were made by the Court, prosecutor or his counsel to the movant and no offers of reward were made to the movant and no threats were made to movant to induce the movant to enter his plea of guilty to the charge of Robbery in the First Degree.

"The movant was lawfully sentenced on his plea of guilty and the sentence imposed by the Court is within the range of the statutory punishment so provided.

"That said sentence of twenty-five years is not excessive considering the crime committed by the movant and to which crime the movant entered a voluntary plea of guilty.

"That all of the constitutional rights and privileges of the movant as provided by the constitution of the State of Missouri and the constitution of the United States were fully protected, that none of the constitutional rights of the movant under the constitution of the State of Missouri or of the United States were in any way violated, and that the judgment and sentence imposed by the Court is constitutional and in accordance with the statutes of the State of Missouri."

Subsequently, on petitioner's appeal from the overruling of his Rule 27.26 motion, the Missouri Supreme Court held those findings not to be clearly erroneous. Further, as is shown by the transcript of the hearing held on the Rule 27.26 motion, supplied by petitioner with his petition and relied on in support of his contentions, the findings were reliably made after hearing the testimony of petitioner, petitioner's attorney, and of Carl Watson and Essie Watson, the parents of petitioner's co-defendant. None of the witnesses was able to testify that petitioner had been misled by his counsel into believing that an agreement existed whereby petitioner would receive only a five-year sentence if he should plead guilty. Petitioner relies principally on his own testimony at pages 29, 30 and 31 of the transcript of the Rule 27.26 hearing, where he testified as follows on direct examination:

"Q Mr. Berry, when you pleaded guilty before this Judge had there been any promises to you as to the amount of time that you would be sentenced?

"A With the understanding I had from my lawyer was that he stated that if I pleaded guilty that he would talk—that he say he knew the Judge and he'd talked to the Prosecutor's office and that they would drop these other cases, these two cases.

"Q (by the Court) You say 'he knew the Judge'?

"A Yes, sir

"Q (by the Court) What did that have to do with it?

"A That you all went to school together or something

"Q (by the Court) What's that?

"A Went to School together.

"Q (by the Court) That he went to school with me?

"A The best of my recollection.

"Q (by the Court) All right. For the record, Mr. Beitling did not attend school with the Court.

\* \* \* \* \* \*

"A And they had reached an agreement that if we pleaded guilty we would get between five and seven years. And I remember when I first went to the county jail that he come up there and talked to us and he'd tell us, you know, the case looks bad, and he wouldn't want to have a jury trial and that it would be best for us to plead guilty and that if we did, you know, it would save a lot of trouble and that we would get this amount of time, that Watson would get five years and I would probably get five or seven years.

"Q Now, Ronald, you were—you had three charges pending against you, is that correct?

"A Yes

"Q And you were—you pleaded guilty to this charge involving the supermarket here?

"A Yes

"Q Now, the other two charges, you realize, could have been brought up by the Prosecutor's office. And I don't believe they've been dismissed yet, have they, [Ronald]?

"Mr. Dakopolos (Prosecutor): I think they've been dismissed but they can be refiled at any time.

"Q Did you ever talk to a member of the Prosecutor's office about this?

"A No.

"Q This gentleman or any other person who said they represented the Prosecutor's office?

"A No, I haven't.

"Q Your only discussion was with your attorney, Mr. Beitling?

"A Yes. And when he made that statement in front of him, I thought that since, you know, he didn't say anything I thought that they had already made this agreement.

"Q Now, was he present or nearby when this statement was made?

"A I can't remember his face too well but I think that was him. And then when we got sentenced, it was a different prosecutor and he asked the Court for a severe penalty.

"Q That's what I was thinking, I was looking at the record, the record shows that this gentleman here was there both times and that's why I started to look, but he tells me that he was there. I'm sure that he was. Now, Ronald, you made your plea of guilty based on what your attorney told you you would get and you think a member of the Prosecutor's staff was within hearing distance and said nothing about this.

"A Yes.

"Q There was no promises, then, by any member of the Prosecutor's staff that that would be what you would get?

"A Not to me but was supposed to be made to Mr. Beitling."

Resolving all of the uncertainties of the above testimony in favor of petitioner, his own testimony does not make any case of any misleading by his counsel to plead guilty. According to petitioner, his counsel made no statement that any agreement had been reached between him and the prosecuting attorney. Petitioner admits that his counsel did not state that an agreement had been made, but rather that petitioner assumed such an agreement had been made inasmuch as his counsel made the statement that he would "probably" get a sentence of five to seven years and that certain other indictments might be dismissed in the presence of someone who appeared to be the prosecuting attorney. That petitioner had been advised by his counsel only of certain probabilities is borne out by the testimony of petitioner's counsel to the following effect:

"So when Ronald was talked to with reference to the plea it was my understanding that Ronald was informed that the minimum amount of time that he might get on this would be five years. And that, although there was not much of a chance for parole, that there was a slight chance of a parole, but this depended on how this presentence investigation came out and depended upon his background. At that particular time I had had other cases where consideration had been given with reference to parole possibilities on robbery cases and, therefore, it was my belief that there was this possibility; again, not completely knowing Ronald's background but knowing it only as much as he was able to tell me. He was informed that the least that he would receive would be a five-year sentence, the maximum that he could receive because there was a deadly weapon involved was death." (Tr. 21.)

Petitioner's claim that he was misled into pleading guilty is directly contradicted by the foregoing. Further, petitioner's claims that the testimony of

Mr. Carl Watson and Mrs. Essie Watson establishes the existence of an agreement which was used to mislead petitioner into pleading guilty are not well founded. Mr. Watson, the father of petitioner's co-defendant, testified that petitioner's counsel told him "that my son would get five to seven years if he would plead guilty [and that] [m]y son told me that Mr. Berry here had the same offer." (Tr. 13.) Mr. Watson, however, testified that he had never discussed this with petitioner. Mrs. Watson gave essentially the same testimony.

■ On the question of the guilty plea, federal standards regarding waiver of constitutional rights are applicable. A guilty plea is in many respects tantamount to the waiver of a jury trial, which is guaranteed by the federal constitution. "The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 [, 1466, 146 A.L.R. 357]— 'an intentional relinquishment or abandonment of a known right or privilege' —furnishes the controlling standard." Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, 869. After the plenary evidentiary hearing on the Rule 27.26 motion, the trial court specifically and reliably found that there had been no promises made to petitioner by the Court, prosecutor, or petitioner's counsel. The postconviction hearing described above satisfied the requirement of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205, that there be a reliable nonjury preliminary or postconviction determination of the issue of voluntariness, "a determination uninfluenced by the truth or falsity of the confession" by procedures "fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend." 378 U.S. at 391, 84 S.Ct. at 1788, 12 L.Ed.2d at 924. Such a full and adequate hearing was held in this case in which all federally protected rights were accorded to petitioner, including the right to offer

witnesses and other evidence in his own behalf. On the testimony given at the hearing, both the State trial court and the State supreme court could properly conclude, as they did, that the petitioner did not sustain his burden of proving the involuntariness of the guilty plea and that the State met its burden of producing substantial evidence of waiver of the right to a jury trial. Rule 27.26 of the Missouri Rules of Criminal Procedure imposes the burden of proof on petitioner to prove by a preponderance of the evidence his right to relief. This burden of proof "is the risk of non-persuasion, the primary sense of the words, 'burden of proof.'" IX Wigmore on Evidence (3rd ed.) § 2485, pp. 270, 271. On the other hand, when it appears by proof that the movant was not accorded a fundamental federal right, the burden of proof in the secondary sense, namely the burden of producing evidence to show the waiver affirmatively, shifts to the State. Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70. The failure of the State to produce evidence of waiver would require a finding in favor of petitioner on this issue. Mosley v. Dutton (C.A.5) 367 F.2d 913. When such an affirmative waiver is shown, the burden of proof (in the primary sense) that the waiver was not understandingly and intelligently made remains upon the convict movant. Carnley v. Cochran, *supra;* cf. Rimanich v. United States (C.A.5) 357 F.2d 537; Lane v. United States (C.A.5) 373 F.2d 570; Pedicord v. Swenson (W.D.Mo.), Part III, 304 F.Supp. 393. In the case at bar, the transcript of the proceedings of the guilty plea was admitted in evidence. That transcript shows that petitioner admitted the elements of the charged offense; stated that he was pleading guilty because he was guilty; stated that he was the one who held the pistol rather than his co-defendant; that he understood the range of punishment as "Five to death"; and that he did not desire a jury trial. The State thereby met its burden of producing affirmative evidence of the waiver

of jury trial; and petitioner did not meet his burden of proving that the waiver was involuntary. Petitioner objects that the questions propounded to him by the sentencing state judge (which elicited the answers set out above) came after, rather than before, the acceptance of the guilty plea by the judge. By its nature, the objection invokes the recent rule of the United States Supreme Court in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, which held that a sentencing federal judge must comply with Rule 11 of the Federal Rules of Criminal Procedure to the effect that he must first address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and consequences of the plea before accepting a guilty plea. It is obvious from the transcript of the sentencing in this case, however, that the sentencing judge had not finally and irrevocably accepted the plea before his inquiry of the defendant. Otherwise, the inquiry met the requirements of the applicable federal standards under Rule 11. Further, the *McCarthy* case is not applicable to petitioner's sentencing, which took place on October 26, 1967. The *McCarthy* case was decided on April 2, 1969, and is not retroactive. Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16. The federal standard which applied at the time of petitioner's sentencing was that the sentencing judge need apply no particular form, ritual or technique in order to satisfy himself that the plea of guilty was voluntarily and understandingly made. Bartlett v. United States (C.A.8) 354 F.2d 745, cert. denied 384 U.S. 945, 86 S.Ct. 1471, 16 L.Ed.2d 542. Further, the court is not limited to the record of sentencing in determining the volun-

tariness of the guilty plea, nor is it limited to the record made by the judge inquiring respecting the voluntariness of the plea. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. In that case, the holding of Carnley v. Cochran, *supra*, was repeated to the effect that the "record must show, or there must be an allegation and evidence which show," that the waiver was voluntary. 395 U.S. at 242, 89 S.Ct. at 1712. In the case at bar, the testimony of petitioner's counsel was definite and unequivocal that no promise of a five-year sentence was made to petitioner. His testimony further corroborates the transcript of the plea that petitioner fully understood the maximum and minimum ranges of punishment. See Pedicord v. Swenson, *supra*. The trial court, furthermore, enunciated current federal standards in finding that petitioner entered his plea with knowledge of his right to trial by jury and to the assistance of counsel therein, with understanding of the offense with which he was charged and the punishment therefor. See Mountjoy v. Swenson (W.D.Mo.) 306 F.Supp. 379, 382. Petitioner's contention that his plea of guilty was not voluntarily made is therefore without merit.[1]

The Court notes that petitioner also raised in his Rule 27.26 motion in the State trial court the contention that the twenty-five year sentence was excessive. In order to observe the rule against piecemeal adjudication of petitioner's claims, that contention must also be considered by this Court, although it is not specifically raised by petitioner in the petition in this case. White v. Swenson (W.D.Mo. en banc) 261 F.Supp. 42; Taggert v. Swenson (W.D.Mo.) 313 F.Supp. 146. The records submitted by petitioner show, how-

---

1. In In re Parker (C.A.8) 423 F.2d 1021, 1025, the Eighth Circuit Court of Appeals recently stated that:

"Nowhere does Parker assert that he was misled by counsel or given improper advice * * * [T]here must be a showing of cause and effect, i. e. that the inadequacy of counsel contributed in some manner to an involuntary

guilty plea. The record does not contain any suggestion of threats or promises made to the defendant in order to induce the plea of guilty."

That is the case at bar, where even the statements of petitioner, if accepted as true, do not make a case of an involuntary plea of guilty.

ever, that, while the state trial court ruled adversely to petitioner on the contention, petitioner did not raise the point on appeal in the Missouri Supreme Court and the Missouri Supreme Court did not rule on the contention. Petitioner must therefore be deemed to have bypassed his state remedies with regard to this contention within the meaning of Fay v. Noia, *supra*, inasmuch as petitioner, by failing to raise this ground in the Missouri Supreme Court, "understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts." 372 U.S. at 439, 83 S.Ct. at 849, 9 L.Ed.2d at 869. Petitioner must therefore be regarded as having forfeited his federal habeas corpus rights in respect to this contention.

▆ Further, petitioner's allegation that his sentence of twenty-five years' imprisonment for the offense of robbery in the first degree by means of a dangerous and deadly weapon does not state the denial of any federally protected right. Section 560.135 RSMo, V.A.M.S., specifies that the convict may receive from five years' imprisonment to the death sentence for this offense. When the sentence imposed is within the statutory limit, there is no violation of any federal right, in the absence of the most exceptional circumstances not stated to be present in this case, nor shown by the records of the state courts. See United States v. Lewis (C.A.4) 392 F.2d 440.

Petitioner's petition herein for habeas corpus must therefore be denied. It is therefore

Ordered that petitioner be, and he is hereby, granted leave to proceed in forma pauperis. It is further

Ordered that the petition herein for habeas corpus be, and it is hereby, denied.