**STATE of Missouri, Respondent,**

v.

**Roy BIBEE, Appellant.**

**No. 9370.**

Missouri Court of Appeals,
Springfield District.

May 21, 1973.

Motion for Rehearing Denied June 12, 1973.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for respondent.

Ralph E. Baird, Joplin, for appellant.

PAUL E. CARVER, Special Judge.

Roy Bibee was found guilty by a jury in the Circuit Court of Jasper County, Missouri, of robbery in the first degree by means of a dangerous and deadly weapon and was sentenced to imprisonment for a term of 25 years under the supervision and custody of the state Department of Corrections of the state of Missouri. §§ 560.-120 and 560.135, RSMo 1969, V.A.M.S. From the judgment and sentence resulting therefrom, he has appealed to this court.

The notice of appeal in this cause was filed on January 18, 1972. The trial court

granted the appeal to the Supreme Court of Missouri. On August 7, 1972, the Supreme Court of Missouri ordered this case transferred to the Missouri Court of Appeals, Springfield District. We have jurisdiction to hear it.

About 10:15 p. m. on August 7, 1970, Ellen Brand, now Ellen McClary, was alone in the ticket booth of the Crest Drive-In Theater in Joplin, Missouri. The drive-in theater was located in the southeast edge of Joplin, adjoining the Newton County line. It was owned by the Tri-State Drive-In Corporation, a corporation which was engaged in the business of operating motion picture theaters.

Ellen Brand was employed by the Crest Drive-In Theater selling tickets to patrons of the theater when a man drove up to the box office in a white car and asked her for the money. The man had a "small gun" and the windows on his car were rolled down, and he had his hand leaning on the window. The gun was not pointed directly at her. He said, "Hand me all the bills." She said, "O.K." and gave him the money. When she saw the gun, she was terrified. She had seen this man about thirty days before at the Crest Drive-In. After the robbery the man drove off behind the booth in front of the picture screen and out the exit at a speed of approximately thirty to thirty-five miles an hour. She could not read the license number on the car, due to the position of the car, although she tried. When the car reached the exit, it was driven onto Range Line and turned south toward Newton County. A car of similar description was found about 11 p. m. on South Range Line in front of the Arches Inn. The Arches Inn is a restaurant and motel located about one-half mile south in Newton County from the Crest Drive-In. At the time of the robbery she estimated she was about three and a half feet away from him, looking out of the window of the drive-in theater into the window of the car. The booth is lit on the inside and on the outside, the lights around

the roof being in the nature of spotlights but the lights did not shine in the car.

Ellen Brand wore contact lens but wasn't sure she was wearing them because they bothered her eyes, so she took them out and forgot them. Ellen Brand had her sixteenth birthday in August of 1970, and thereafter she married and her name at the time of the trial was McClary. We shall refer to her hereafter as Ellen McClary. Her difficulty was seeing things that were close. She had no difficulty in seeing things from a distance. She could only see the upper part of the man, as he never got out of the car. She identified the defendant in the courtroom as the man who held her up on August 7, 1970. Prior to August 7, 1970, she had seen the defendant on July 5, 1970, shortly after ten o'clock; and at the time of the trial she had seen him in the Magistrate Court of Jasper County on August 18, 1971. There was no question in Ellen McClary's mind that the only time she had seen the defendant prior to August 7, 1970, was on July 5, 1970.

A short time after the robbery several police officers visited her and she went with them and identified a white Ford automobile found near the Arches Inn as a car "that looked like it." She previously had identified the car as a "Ford or Chevrolet or something and of white color." About forty-five minutes after the robbery she was taken to the Joplin Police Station to look at pictures. Later a member of the Joplin Police Department came to her house on several occasions and showed her pictures. An assistant prosecuting attorney of Jasper County had shown her a picture of the defendant. This was on the evening before the preliminary hearing, and she again looked at the picture the next morning. She stated that she did not remember picking out the picture marked defendant's Exhibit 3 at the Joplin Police Station from several loose pictures, but acknowledged that the assistant prosecuting attorney and Detective Forney, along with other police officers had showed her defend-

ant's Exhibit 4. Defendant's Exhibit 3 is a picture of a man other than the defendant, and defendant's Exhibit 4 is a picture of the defendant. She picked out the defendant, who was with several other people in the magistrate courtroom, but denies she was relying upon the fact that she had been shown the picture of the defendant by the police officers and assistant prosecuting attorney. She further denied she identified the defendant by his picture for the officers, although he was arrested in California and returned to Joplin after she identified the picture.

The amount of money taken was shown to be $664.

On the night of the robbery near the Arches Inn, which was located a short distance south of the Crest Drive-In, Detective Carlton found a white 1970 Ford, with Oklahoma license, parked with the lights on, motor running, and keys in the switch. This was the car that Ellen McClary testified she identified. Officer Olin J. Daniels, who was called as a witness for the defendant, determined that it had been brought to the Joplin Auto Auction nearby and sold and was waiting transport from Joplin by the buyer, and it was later returned to the Joplin Auto Auction Company by the Joplin Police Department. At the preliminary hearing Officer Daniels, who had examined the car, testified that he didn't think they took fingerprints but admitted at the trial that they did take fingerprints. He further stated that they had not been sent in or processed. The impression of the fingerprints taken from the Ford were not produced but were concealed until the trial when Officer Daniels was subpoenaed and the records and files were searched during the course of the trial by defendant's counsel and marked as defendant's Exhibit 6. Exhibit 6 was not introduced into evidence.

Della Jean Bebee, who was called as a witness by the defendant to rebut the testimony of Ellen Brand McClary concerning her knowing Roy Bibee, testified that she was with him on the night of July 5, 1970, in Commerce, Oklahoma, from eight o'clock in the evening until twelve o'clock midnight or one o'clock thereafter. At Commerce they went to Jerry's Club and they signed a book on entering the club; that they were unable to find the book that was supposedly signed by them, as Jerry's Club had been closed. She also testified she had been intimate with the defendant, and after the robbery had gone to California with him. She admitted she had been convicted along with the defendant on a burglary charge in California. She also admitted having been convicted of burglary in the state of Texas.

The defendant, Roy Bibee, was called as a witness on his own behalf. The defendant on direct examination stated he had been twice convicted of felonies; one conviction being for violation of the Dyer Act in the state of Indiana, and one on the charge of burglary in the state of California. Also, that Della Jean Bebee was also convicted with him on the burglary charge in Visalia, California. He further testified that he had been prosecuted in California under the name of David Earl Harper.

Defendant's testimony was the same as Mrs. Bebee's concerning the night of July 5, 1970. He admitted that they were both together that night at Jerry's Club at Commerce, Oklahoma, and that it took about fifteen minutes to go from Joplin to Commerce; that they left Jerry's Club between 12:30 p. m. and 1 a. m. and that they went to his motel, where he and Mrs. Bebee stayed until 3:00 or 3:30 a. m. on July 6, 1970. He did not remember where he was on the night of August 7, 1970, but that he did not rob this young lady.

He testified that the witness Ellen McClary had testified at the preliminary hearing to picking out a picture other than the defendant and identified another person to the city police officer as the robber; and he heard her testify at the preliminary hearing that she identified him at the pre-

liminary by use of a picture shown to her before the identification marked defendant's Exhibit 4. He also testified the defendant was in the hall at the magistrate court on the morning of the lineup and saw Ellen McClary, who a short time thereafter picked him out. He further stated that a search was made for the books and records of Jerry's Club of Commerce, Oklahoma, prior to the trial, on behalf of the defendant, but these could not be found.

The assistant prosecuting attorney, Grant Scott, in rebuttal disputed the defendant's testimony that the witness Ellen McClary had placed her identification of the defendant on pictures.

Ralph Baird, the attorney for the defendant, had been and is representing the defendant under appointments by the Circuit Court and Magistrate Court of Jasper County, Missouri. His appointment in the circuit court was made on September 20, 1971, when the defendant and his attorney were notified at the time the case was set for trial before a jury on September 30, 1971. An application for continuance of this case from September 30, 1971, was denied. Mr. Baird, representing the defendant as an attorney, asked the court to permit him to withdraw from the case because he was likely to be a material witness for the defendant. This motion was also denied.

During the closing argument of the trial in circuit court Mr. Ben Pyle, the prosecuting attorney, referred to the defendant as "this bird" and upon objection of the defendant, the court ordered the jury to disregard the reference, after which the prosecuting attorney referred to him as "a pro." The court instructed the jury to disregard the remark upon objection of the defendant. The prosecuting attorney in his final argument stated to the jury that the witness, Mrs. Bebee, who testified she was with the defendant on July 5, 1970, in Commerce, Oklahoma, might have been with him at the Crest Drive-In on July 5, 1970.

In the motion for a new trial proceedings the State agreed that the defendant would, if placed on the witness stand, testify that he was placed in solitary confinement for twenty-four days or more in the county jail at Carthage, was made to sleep on the concrete floor without bedding; that he was choked by his jailer; that he was deprived of normal jail food and was subsisting from time to time on bread and water, first two meals every other day, then one meal every other day, and that that occurred prior to his conviction. The State admitted that if the defendant were present, that he would testify to these facts but did not admit or agree that such testimony was true. The jury, after hearing the evidence, found the defendant guilty and sentenced him to a term in the penitentiary of 25 years.

On January 13, 1971, the defendant's motion for new trial was denied. On the same date the defendant was ordered confined under the state Department of Corrections for a period of 25 years.

The defendant has set out twelve assignments of error. We shall consider them in the order stated.

Assignment Number I: "The Court erred in denying a continuance to the defendant on September 20, 1971, because the defendant was unable to properly prepare for trial within the time allotted by the Court, and thereby the Court abused its discretion."

In order to determine this assignment of error a detailed inspection of the record must be made.

The record discloses that Ralph Baird was appointed as counsel for defendant on July 6, 1971, by the Magistrate Court of Jasper County, Missouri. Mr. Baird accepted the appointment and vigorously defended the defendant at all times. He appeared before the magistrate court on the 14th and 28th day of July, 1971, and filed motion to dismiss the preliminary hearing. On August 4, 1971, he again appeared in magistrate court and moved that defendant

be released on his own recognizance. On August 18, 1971, he appeared for the preliminary hearing. The prosecution presented its evidence and rested, and upon request of Mr. Baird the case was continued again until August 25, 1971. At the hearing on August 25, 1971, he presented evidence on behalf of the defendant, requested permission to inspect various pictures of the defendant and other people which had been used and admitted in evidence in the identifying of the defendant. This request was granted.

On September 8, 1971, Mr. Baird appeared in magistrate court and filed motion for additional cross-examination of Ellen McClary. This motion was denied. Defendant then through Mr. Baird rested his case, and defendant was bound over to the circuit court for trial. The case was set for trial in circuit court on September 30, 1971. Mr. Baird immediately then filed an application for continuance, based on inadequate time to interview, obtain witnesses, and to prepare for trial, which the circuit judge denied. Mr. Baird's representation is shown in detail in order to show his familiarity with the facts of defendant's case and the quality of his representation.

■ It is obvious that Mr. Baird was familiar with all the facts existing in this case because of his vigorous representation in the magistrate court. He had been acting as court-appointed counsel since July 6, 1971, and was familiar with all of the facts. The application for a continuance is addressed to the sound discretion of the trial judge, and we will not interfere in the exercise of that discretion unless it has been abused. State v. Boykins, 399 S.W.2d 70, 73[4] (Mo.1966). The record does not indicate any lack of preparation or disadvantage to the defendant attributable to the refusal of the continuance. Application for continuance was addressed to the sound discretion of the trial court, and no abuse of discretion has been shown. State v.

Russell, 395 S.W.2d 151, 154[2] (Mo. 1965).

We hold the trial court exercised sound judicial discretion in overruling the application and did not act arbitrarily, capriciously and oppressively, or abuse its discretion. State v. Le Beau, 306 S.W.2d 482, 486[1–4] (Mo.1957). Assignment Number I is denied.

Assignment Number II: "The Court erred in refusing the request of defendant's attorney to withdraw from the case because he was likely to be a material witness for the defendant."

■ Mr. Baird informed the court that he desired to testify. By agreement of counsel it was stipulated that he would be permitted to do so. His evidence was favorable to the defendant. No objection was made by the State or the defendant. He may not now complain where no objection was made, and particularly where such evidence was introduced by the defendant. Defendant's Assignment Number II is denied.

Assignment Number III: "The Court erred in not admonishing the Prosecuting Attorney for referring to the defendant as 'that bird' or 'a pro' in the final argument for the reason that requesting the jury to disregard these statements was insufficient to remove the prejudicial effect created by those remarks and others of similar import."

■ The trial court promptly sustained defendant's objection to the State's argument when the prosecuting attorney referred to the defendant as "that bird" and "a pro" and ordered it stricken. The jury was instantly instructed to disregard such statement. Defendant's attorney stated to the court: "If the Court please, I object to this and ask the Jury to be instructed to disregard it and that Mr. Pyle be reprimanded." The court immediately again told the jury, "Well, the Jury is instructed to disregard this statement." No request

for a mistrial was made or to discharge the jury or for further relief. He received all of the relief he was asking, except the court did not reprimand the prosecuting attorney. If he deserved more and was not satisfied with the action of the trial court, defendant should have asked such further action of the court as he desired, or he cannot complain. State v. Raftery, 252 Mo. 72, 83[3], 158 S.W. 585, 588[4] (Mo. 1913). Defendant made no further request for relief. Control of argument of counsel is within the discretion of the trial court. There was no abuse of discretion. State v. Stroud, 362 Mo. 124, 128[5], 240 S.W.2d 111, 113[9, 10] (1951). Finding no error, Assignment Number III is denied.

Assignment Number IV: "The Court erred in permitting the Prosecuting Attorney to argue for the State that the witness Mrs. Bebee might have been with the defendant at the Crest Drive-In on July 5, 1970, because there was no basis in the evidence for this accusation and it was unduly prejudicial to the defendant."

■ The prosecuting attorney in his argument to the jury did state, "[I]t is not inconceivable that Mrs. Bebee might have been with Mr. Bibee on July 5 at the Crest Drive-In." Mr. Baird, without making an objection, stated, "There is no such evidence on that that would justify any such statement as that." The record does not show any other objection. The record does show that on the night of July 5, 1970, she was with the defendant from 8 p. m. until 3 or 3:30 the following morning. The record would justify the prosecuting attorney's statement of the whereabouts of Mrs. Bebee on the night in question. They were together at the time mentioned by Ellen McClary; the only thing lacking being that they were at a different place. Defendant says, and Mrs. Bebee agrees, that they were together that night in Commerce, Oklahoma. Defendant said, "It takes about fifteen minutes to go from Commerce to Joplin." Absent an objection being made in proper form, and reasonable grounds existing for the argument made by the prosecuting attorney, Assignment Number IV is denied.

Assignment Number V: "The defendant's punishment is excessive in that it resulted from unduly prejudicial and inflammatory matters complained of by the defendant during the course of the trial."

■ The power to prescribe the penalty to be imposed for the commission of a crime rests with the Legislature and not with the courts. King v. Swenson, 423 S.W.2d 699, 706[14] (Mo. banc 1968). That body may provide a minimum and maximum and leave it to the jury to fix a definite term within these limits. Johnson v. United States, 318 F.2d 855, 859[10] (8th Cir.1963); State v. Smith, 445 S.W.2d 326, 332[6] (Mo.1969).

■ The sentence of 25 years assessed against the defendant is within the limits prescribed by law under § 560.135 RSMo 1969, V.A.M.S., and is not excessive. State v. Phillips, 480 S.W.2d 836, 837[4] (Mo. 1972); State v. McCaine, 460 S.W.2d 618, 621[7] (Mo.1970); State v. Cook, 440 S.W.2d 461, 462[1] (Mo.1969).

■ Where an assignment in a motion for a new trial is "the punishment assessed is excessive," it presents nothing for appellate review where the punishment is within the statutory limits. State v. Jackson, 371 S.W.2d 309, 310[4] (Mo.1963).

The Courts of Missouri have repeatedly approved sentences of 25 years for robbery in the first degree, with a dangerous and deadly weapon, and held them not excessive. Hodges v. State, 462 S.W.2d 786, 790 [3] (Mo.1971); Keeny v. State, 461 S.W.2d 731, 733[5] (Mo.1971); State v. Cooley, 221 S.W.2d 480, 485[11, 12] (Mo.1949); State v. Preston, 184 S.W.2d 1015[7] (Mo.1945). The United States District Courts for the Western District of Missouri hold such a sentence not excessive and not a denial of any federally protected right. Berry v. Swenson, 326 F.Supp. 1120, 1128[12] (W.D.

Mo.1971). Assignment Number V is denied.

The defendant for the first time in his motion for a new trial attempts to raise a constitutional question. He designates it Number 9 in his motion but as Number 6 in his brief. Assignment Number 9 in his motion for a new trial is as follows:

"The Court abused its discretion by failing to grant the defendant a continuance when requested for the reason that defendant had been unable to cooperate with counsel in the preparation of the defense of his case, because defendant had been confined in jail, unable to make the required bail bond because he was indigent, and while confined in jail was, without reason or excuse placed in solitary confinement for twenty-four days or more in the County Jail in Carthage, made to sleep upon the concrete floor without bedding, was choked by a jailer and deprived of normal jail food and forced to subsist from time to time on bread and water, and first two meals every other day and then one meal every other day, and upon formal complaint being made in the course of the proceedings to the Magistrate of said mistreatment and alleging the same was not for disciplinary purposes, the prosecuting attorney opposed this defendant's request for release upon recognizance continuously on the grounds that the Court had no jurisdiction, and said Court so ruled, that the treatment was such that defendant was unable to cooperate in the preparation of his trial, to remember the ordinary events of the day, and could not remember his whereabouts on August 7, 1970, the date of the robbery; that defendant has since remembered his whereabouts on said date and that the treatment rendered to him as aforesaid was such as to be cruel and unusual punishment and to deny him the right of a fair trial in violation of his rights under the Constitution of the State of Missouri and of the United States of America."

In Assignment VI in his brief defendant sets out his allegation as follows: "The Court erred in failing to grant a new trial for the reason that the undisputed treatment of the defendant in the County Jail immediately prior to his trial benumbed his energies and senses to the extent that he was unable to prepare or assist in the preparation of his defenses and was thereby deprived of the right to a fair trial. Constitution of 1945 of the State of Missouri, Article 1, Sections 10, 14, 18(a), and 22 [V.A.M.S.]."

The record discloses that no claim of mistreatment was ever brought to the trial court's attention until the time of the argument on the motion for a new trial. At that time by agreement of counsel it was agreed that: (1) Mr. Baird would testify rather than call the defendant as a witness. (2) That Mr. Baird's testimony would be the same as if the defendant was present and testifying. (3) The State did not agree that the statement was true.

To raise constitutional grounds the party asserting them must present and direct the trial court's attention to such an objection by clearly stating with particularity the constitutional grounds at the first opportunity, the sections of the constitution claimed to have been violated, and it must be preserved in the motion for a new trial and must be adequately covered in the briefs. State v. Meiers, 412 S.W.2d 478, 481[2–4] (Mo.1967); Ingle v. City of Fulton, 260 S.W.2d 666, 667[1] (Mo.1953); Kansas City v. Howe, 416 S.W.2d 683, 686–687[4, 5] (Mo.App.1967).

In defendant's motion for a new trial he complains "that the treatment [he received in jail] was such as to be cruel and unusual punishment and to deny him the right of a fair trial in violation of his rights under the Constitution of the State of Missouri and of the United States of America."

Defendant in his brief does not correct such an assignment of error. The defendant attempts, however, to clothe this assignment with respectability in his brief by adding "Constitution of 1945 of the

State of Missouri, Article 1, Sections 10, 14, 18(a) and 22." Such assignment is insufficient to raise constitutional questions. Kelch v. Kelch, 450 S.W.2d 202, 205, 206[4, 5, 6] (Mo.1970); State v. Brookshire, 325 S.W.2d 497, 500[5] (Mo.1959).

Defendant's Assignment Number VI is denied.

Assignment Number VII: "The Court failed to instruct the jury on all questions of the law necessary for their guidance in returning their verdict by failing to instruct the jury that testimony concerning prior convictions of defendant could be considered only in relation to his credibility as a witness and not to the question of the guilt of the defendant."

Upon defendant's direct examination by his attorney he was asked if he had prior felony convictions. He answered that he had—one for "violation of the Dyer Act in Indiana" and one "for burglary in California." No request was made for an instruction of which he complains, nor was the trial court presented a correct or incorrect instruction which told the jury that "prior convictions of the defendant could be considered only in relation to his credibility as a witness and not the question of the guilt of the defendant."

The trial court gave a general instruction as to the credibility of the witnesses. The defendant does not claim any error in the general instruction but does insist that a "prior conviction" instruction telling the jury there was no evidence of defendant's guilt but only as to his credibility, should have been given.

The general rule is that an instruction which unduly directs attention to the credibility of a witness or classes of witnesses or the manner in which the testimony should be received, is erroneous. State v. Everett, 448 S.W.2d 873, 878[4] (Mo.1970); 23A C.J.S. Criminal Law § 1308, 1.c. 751. Instructions on credibility of witnesses should be couched in general terms applying alike to all witnesses. De-

fendant was not the only witness to testify with prior felony convictions. Mrs. Bebee, who testified on behalf of the defendant, had two felony convictions. The trial court did not err in giving a "general" credibility instruction. State v. Everett, supra; State v. Cohen, 100 S.W.2d 544, 548[6] (Mo.1936).

Defendant's counsel certainly did not elicit from the defendant the fact he had two prior felony convictions for the purpose of damaging his credibility. His action most certainly was to take the "sting" out of defendant's convictions if and when these questions were asked by the prosecution on cross-examination. Such questions were properly asked by the prosecution on cross-examination and were affirmatively answered in detail by the defendant without objection.

Defendant introduced the testimony of his two felony convictions without objection from the State. We conclude that the defendant purposely chose to introduce this testimony as part of defendant's trial strategy. With this evidence in the record, defendant made no effort to exclude it, nor did defendant object when it was brought out on cross-examination; nor did the defendant offer any written instruction. In this situation the defendant may not now claim error. State v. McCaine, supra, 460 S.W.2d at 624. The trial court cured any error when it gave the general credibility instruction.

The defendant did not request such an instruction or offer one in writing. In fact, the record shows no mention of any instruction on credibility of a witness prior to the motion for a new trial. Under the record in this case defendant is not entitled to relief on this assignment of error. State v. Taylor, 472 S.W.2d 395, 403[9] (Mo. 1971); State v. Kelley, 442 S.W.2d 539, 541 [7] (Mo.1969); State v. Meller, 382 S.W.2d 671, 674[3] (Mo.1964); State v. Miller, 292 S.W. 440, 441–442[4, 6] (Mo.1927). Defendant's Assignment Number VII is denied.

Assignment Number VIII: "The concealment of the impressions in the hands of the Joplin Police Department of fingerprints taken from the Ford automobile in which the robber drove from the theater, and which was found a short time later near the scene of the crime, and the failure to process these prints amounted to the suppression of evidence in the possession or control of the prosecution which may have been favorable to the defendant, and constituted a fundamental unfairness to the defendant."

Olin J. Daniels, a detective of the Joplin Police Department, was called as a witness by the defendant. He stated in answer to inquiry from defendant's attorney that at the Arches Inn on U. S. 71 and I–44, at a point about five blocks from the Crest Drive-In Theater, that a white 1970 Ford with an Oklahoma license was found with the lights on, motor running. There was no one in the car, and later it was determined that it had been stolen from the Joplin Auto Auction, which was located close by. This car was shown to Ellen McClary, who said "it looked like the vehicle." Fingerprints were taken from the car, but for some reason unknown to Detective Daniels, had not been processed at the police department. It was later learned that actually they had been processed, but which fact was unknown to Officer Daniels. Defendant's attorney was given the fingerprints and examined them. They were designated Exhibit 6 and offered into evidence. However, the record does not show they were admitted by the court as evidence or exhibited to the jury. The transcript does not indicate whether the fingerprints were that of the defendant or of anyone else. Defendant's attorney did agree that they "be returned to the file." No further request or objection was made by the defendant.

As a general rule, where the record does not show what the offered evidence was, and that it was relevant and material, it cannot be reviewed on appeal.

State v. Morris, 480 S.W.2d 825, 827[5] (Mo. banc 1972); Moore v. Parks, 458 S.W. 2d 344, 348[6] (Mo.1970); Poston v. Clarkson Construction Company, 401 S.W.2d 522, 528[4] (Mo.App.1966). Assignment Number VIII is denied.

Assignment Number IX: "The Court erred in overruling the defendant's motion for a new trial because the reasons stated therein were sufficient to compel a new trial for this defendant. (The reasons stated in the motion are dealt in other Points Relied On)."

Assignment Number IX is presented in the defendant's brief for the first time. It is not set out in his motion for a new trial. In order to be preserved for appellate review it must be presented to the trial court in a written motion for new trial and with particularity. Such an assignment has not been properly presented. Rule 27.20(a), V.A.M.R. Assignment Number IX is denied.

Assignment Number X: "The Court erred in excluding the offered testimony of the defendant that he, the defendant, offered prior to his trial to undergo a lie detector test as to whether or not he had committed the robbery with which he was charged."

Assignment Number X complains that the defendant offered to take a lie detector test at the preliminary hearing in the magistrate court. That "Mr. Pyle, the prosecuting attorney, objected to this on the ground that evidence of a lie detector test is not and never has been admissible under the laws of evidence prevailing in the State of Missouri. Mr. Pyle—and the Court ruled that this evidence could not be presented. Your Honor, Mr. Pyle missed the point and I respectfully suggest the Court missed the point. The point of this was not whether a lie detector test, the results of a lie detector test could or could not have been admitted as relevant, competent and admissible evidence in this particular case or in any other case. The point was that the defendant in denying that he had com-

mitted this crime was of such sincere feeling that he was willing to submit himself to a lie detector test conducted by the State as to whether or not he was engaged in this, as part of investigative process. It is an occurrence which I submit to the Court should have been admissible. And would have supported the credibility of his denial of having committed this."

■■ Defendant concedes that the results of polygraph tests are not admissible either for or against the accused.

Defendant contends that although this is correct, that the excluding of evidence in the magistrate court, where defendant offered to take a lie detector test and was refused, that such ruling deprived him of the right to show "his sincere feeling in denying he had committed this crime."

■■ We cannot agree. Such offers have been uniformly rejected as having no probative value, for the reason that an accused has nothing to lose by making the offer, as the result of the test, if favorable, would be inadmissible against him. People v. Durso, 40 Ill.2d 242, 239 N.E.2d 842, 847 [7, 8] (1968). Defendant's offer was merely a self-serving act or declaration, which was obviously made without a possible risk. State v. LaRocca, 81 N.J.Super. 40, 194 A. 2d 578, 581, 582[7, 8] (1963).

It is uniformly held that such a test is not judicially acceptable. It is obvious that neither a professed willingness nor a refusal to submit to such a test should be admitted. Defendant's offer was merely a self-serving act or declaration which obviously could be made without any possible risk, since, if the offer were accepted and the test given, the result, whether favorable or unfavorable to the accused, could not be given in evidence. Commonwealth v. Saunders, 386 Pa. 149, 125 A.2d 442, 445–446[7] (1956). Defendant's Assignment Number X is denied.

Assignment Number XI: "The verdict was contrary to the weight of the evidence inasmuch as there was no corroboration of the identification of the defendant."

■■ Where there is positive identification by a single eyewitness, with explanation as to discrepancies, this constitutes substantial evidence of the guilt of the defendant, and the weight of the evidence is for the jury. This is especially so where the lighting is good and the witness was close to and personally saw the face of the robber, and in a face-to-face robbery even though the time of confrontation was short. State v. Cannon, 486 S.W.2d 212, 214[3] (Mo.1972). Robbery convictions have been upheld where the defense was an alibi as in this case where the identification was no more positive than here. State v. Rima, 395 S.W.2d 102, 104[1] (Mo. banc 1965); State v. Hill, 438 S.W. 2d 244, 248[7] (Mo.1969); State v. Kaner, 338 Mo. 972, 975, 93 S.W.2d 671, 673[3] (1936). Defendant's Assignment Number XI is denied.

Assignment Number XII: "The Court erred in using Assistant Prosecuting Attorney Scott to rehabilitate the testimony of the complaining witness in rebuttal when the witness Ellen Brand McClary was present at the trial."

Grant Scott, an assistant prosecuting attorney of Jasper County, was called as a rebuttal witness by the State. He stated his official capacity and that he was present at the preliminary hearing in magistrate court. He further stated that Ellen McClary stated she did not identify the defendant "based on pictures" but upon seeing him on two occasions; namely, July 5, 1970, and August 7, 1970. No objection was made by the defendant to the testimony. Scott's testimony was in rebuttal to the defendant's testimony on direct examination at his trial in circuit court when Mr. Baird asked: "Q Will you tell the Jury as to whether or not there was testimony at the hearing pertaining to Mrs. McClary picking other pictures other than yours and identifying them to the City Police Officers? A Yes. She said she did." "Q

. . . [Y]ou heard her testify she didn't —this afternoon you heard her testify she didn't pick you out from this picture. A Uh huh. Q Will you tell this Jury whether or not she testified that she did identify you from this picture at the preliminary hearing? A Yes, she did." This picture was Defendant's Exhibit 4. Exhibit 5, a picture, was also shown to the defendant and he said, "Yes, she said she was shown that picture the night before she seen me in the preliminary hearing and the morning of the preliminary." Thereafter, a heated discussion about a tape recording made at the preliminary hearing was had. This was concerning the testimony of Ellen McClary in magistrate court. No objection was made to the typed copy except by defendant's attorney claiming it was "irrelevant, immaterial and incompetent and it is not by a Court Reporter." Further, "It hasn't been provided to me before. It is an attempt just to give rehabilitation to the testimony of this witness [Scott] who was on the stand and she is here and right in the hall." This evidence was withdrawn by the State.

A close examination of the record shows that Scott was used as a rebuttal witness. Defendant testified that Ellen McClary stated at the preliminary hearing that she identified him from pictures. Scott testified that no statement was made by Ellen McClary at the preliminary hearing. The defendant did not object to the testimony of Scott, and we will not entertain a claim of error in improperly admitting evidence unless the question was properly raised in the trial court. The trial court had broad discretion in permitting witnesses to testify in rebuttal. State v. Williams, 442 S.W.2d 61, 65[7, 9] (Mo. banc 1969); State v. Huff, 454 S.W.2d 920, 923[3] (Mo.1970); State v. Goacher, 376 S.W.2d 97, 105[14, 15] (Mo.1964), and in particular that of an assistant prosecuting attorney where no objection is made. State v. Arrington, 375 S.W.2d 186, 195[21] (Mo. 1964). No abuse of discretion of the trial court is shown. Defendant's Assignment Number XII is denied.

A careful consideration of the entire record convinces us that the defendant's assertions of error lack merit. Defendant in all respects had a fair trial, and the evidence supports his conviction, and the trial judge was correct in denying the motion for new trial.

The matters for which no assignment of error is required have been examined, as required by Rules 28.02 and 28.08. The information is sufficient and in proper form. The defendant stood trial upon his plea of not guilty. The jury's verdict is in proper form and responsive to the issues. The punishment assessed was within the range provided by statute. Defendant's motion for a new trial was considered by the capable trial judge and denied. Allocution granted. Defendant had the benefit of competent counsel throughout his trial and upon his appeal. No error appearing from the record, the judgment is affirmed.

TITUS, C. J., HOGAN and BILLINGS, JJ., and ROBERT E. CAMPBELL, Special Judge, concur.

STONE, J., did not sit.